McNAMARA & McCARTY, Appellants, v. HARRISON & ' GREEN, Appellees.

Labor Contracts: PAYMENT ON CERTIFICATE: PERFORMANCE. A contract for grading the road of a railway company provided that eighty-five per cent. of the price therefor should be paid in monthly installments as the work progressed, and the balance within fifty days after the completion of the work, and the pro- duction of a certificate of an engineer therein named as to the quantity of work done, to be determined by measurements taken

after the completion.  Measurements of the work done were made by an assistant engineer each month, but these were for the purpose merely of estimating the amount payable under the provision for payment of the monthly installments.  *Held*, that the provision of the contract requiring a certificate from the engineer as to the amount of work done before final settlement was valid; that the measurements taken monthly were not a compliance with such provision, and that plaintiffs were not entitled to maintain an action for the balance alleged to be due them under such contract until fifty days after the production of the certificate of the engineer therein named, or a showing of sufficient excuse for not producing the same.

*Appeal from Woodbury District Court.*—Hon. C. H. Lewis, Judge.

Tuesday, October 28, 1890.

The plaintiffs seek by this action to recover a balance claimed to be due upon a written contract by which plaintiffs undertook to do certain grading on a branch of the Chicago, Milwaukee & St. Paul railroad. There was a trial by jury. After the evidence was introduced the court directed the jury to return a verdict for the defendant. The plaintiffs appeal.

*Joy, Hudson, Call & Joy,* for appellants.

*J. M. Cleland* and *J. H. & C. M. Swan,* for appellees.

Rothrock, C. J.—I. The defendants were contractors for the construction of a branch of the Chicago, Milwaukee & St. Paul railroad from Sioux City to Manilla in this state. They entered into a written contract with the plaintiffs by which the plaintiffs undertook to grade a part of the line. The plaintiffs claim that they completed their contract, and that the defendants have failed and refused to pay them in full for said grading, and that there is a balance of about one thousand dollars yet due. The contract provided that plaintiffs were to receive for making embankment the sum of fifteen cents per cubic yard, and the same price

for making earth, excavations, except that in making
excavations all earth removed within an extreme haul
of twelve hundred feet, and deposited in embankments,
payment should be made for excavations only. If
earth removed from excavations should be hauled more
than twelve hundred feet, plaintiffs were to be paid in
addition for said hauling one cent per cubic yard for
each one hundred feet beyond the first twelve hundred.
It is claimed that after entering into the contract, and
commencing the work, an assistant engineer of said
railroad company directed the plaintiffs to excavate
and waste a large quantity of earth from a deep cut,.
which required them to borrow and haul earth to make
an adjacent embankment; that after the work was
completed an estimate was made by the engineers by
which all of the earth used in the embankment was.
estimated as though it had been hauled from the exca-
vation. This manner of estimating the work reduced.
the amount to be paid to plaintiffs, and plaintiffs claim
judgment for the difference.

It is averred in the petition that the final estimate
or measurement of the work was false, fraudulent,
untrue and contrary to, the facts, and " was made collu-
sively and fraudulently in collusion with the defend-
ants." The defendants denied the alleged fraud. And
to the end that we may come as speedily as possible to
the real questions in the case it is sufficient to say that
there was no evidence of fraud. It appears that the
defendants had nothing whatever to do in counseling or
directing the manner in which the estimate should be
made. The contract was in the usual form. It pro-
vided for monthly estimates to be made as the work
progressed, and for payment of eighty-five per cent. of
these estimates. The other fifteen per cent. was to be
retained until the completion of the work. These
monthly estimates were made in a hurried manner, and
were not supposed to be entirely accurate. It is con-
ceded that these monthly estimates were made upon

the basis of the work as it actually was without reference to whether it was properly done or not, and that payments were made accordingly. When the work was completed the whole of the excavations and embankments were measured, and this was to be the basis for the final settlement.

The contract is quite voluminous, and we need not copy it in full; there are two of its provisions, however, which we think are decisive of the rights of the parties so far as this action is concerned. Said provisions are as follows: "Par. 4. It is mutually agreed between said parties, that to prevent all disputes and misunderstandings between them in relation to any of the stipulations contained in this agreement, or their performance by either of said parties, the said chief engineer shall be, and hereby is made, an umpire to decide all matters arising or growing out of this contract between them, and the decision of said chief engineer on any point or matter touching this agreement shall be final and conclusive between the parties hereto, and each and every one of said parties hereby waive any and all right of action, suit or suits, or other remedy, in law or otherwise, under this contract, or arising out of same."

"Par. 17. And the said first party, in consideration of the fulfillment and performance of all the stipulations contained in this contract by said second party to be by such second party fulfilled and performed, and whenever said work shall have been, in the opinion of said chief engineer, completely finished in every respect, and performed agreeably to the various stipulations and specifications of this agreement, and said chief engineer shall have furnished to said first party a certificate of the fact under his hand, together with his estimates of the quantity of the various kinds of work done by said second party under this agreement (which estimate shall be final and conclusive between the parties hereto), will pay to said second party any balance due within fifty days after said certificate shall have been furnished by said chief engineer, the

sum which may be due under this contract, agree-
ably to said estimate, at the following rates and prices :"
*    *    *

The defendants set up these clauses of the contract
as a bar to the action.    It appears from the evidence that
the contractors were under the immediate supervision
of one Watts, who was what is denominated a resident
engineer.    Watts was under the control of one Stevens,
who was a division engineer, and had charge of the work
of the whole line.    These engineers were under the control
of the chief engineer of the Chicago, Milwaukee & St.
Paul Railway Company.    No certificate, such as is con-
templated by the above provisions of the contract, was
introduced in evidence, and there was no evidence that
any such certificate was ever at any time made by the
chief engineer; and there was no excuse offered for the
commencement of the action without such certificate
having been made.    It is claimed by counsel for appel-
lant that the defendants, by their acts in adopting a
final measurement of the work made by the division
engineer Stevens, waived this condition precedent to the
right to maintain the action.    But we find no evidence
of such waiver.    It is true they paid the plaintiffs the
full amount due as shown by the estimate made by
Stevens, but this is no evidence of a waiver.

It is further claimed that the estimate made by
Stevens is a compliance with the requirement that a
certificate shall be made by the chief engineer.    It is
surely not a compliance with the contract in terms.    The
parties expressly contracted for a certificate signed by
the chief engineer, and "his estimate of the quantity of
work done by the plaintiffs," and the balance due was
not payable until fifty days after the certificate was
made and furnished.    The parties contracted that they
would settle and pay upon a certificate of the chief
engineer.    They did not bind themselves to act upon
the estimate of a subordinate engineer.    It may be cor-
rect, as claimed by counsel for appellant, that the part
of the provisions of the contract above quoted which
make the chief engineer an arbitrator or umpire between

the parties, and by which all rights of action under the contract are waived is void ; but it is not claimed that the parties may not bind themselves to make payment or settlement upon the certificate or estimate of some third person, such as an engineer, architect or the like. Such contracts have uniformly been upheld by the courts.  1 Am. & Eng. Ency. of Law, p. 668 ; *Loup v. California Southern Ry. Co.*, 11 Am. & Eng. R. R. Cases, 589 ; *Smith v. Briggs*, 3 Denio, 73 ; *Morgan v. Birnie*, 9 Bing, 672 ; *Holmes v. Richet*, 56 Cal. 307 ; *Hennick v. Sewall*, 27 Vt. 673 ; *Fannce v. Burke*, 16 Pa. St. 469 ; *McMahon v. N. Y. & Erie Ry. Co.*, 20 N. Y. 463 ; *North Lebanon Ry. Co. v. McGrann*, 33 Pa. St. 535.

Until it is shown that the chief engineer has made the required certificate, or there is some good reason why it has not been furnished, no action can be maintained. It may be that such a certificate would award to the plaintiffs, all that they claim, and, if so, this controversy would no doubt be speedily settled.  The judgment of the district court is AFFIRMED.