JACOB LEVINE and Another v. LANCASHIRE INSURANCE COMPANY.[1]

November 6, 1896.

Nos. 9676—(5).

### Books of Account—Authentication—Objection.

Where on the trial a party objected to the admission of certain books of account on the ground that they were not properly authenticated under the statute, he cannot be heard to urge on appeal that the statute was inapplicable, and that they should have been authenticated according to the common-law rule.

### Fire Insurance—Proving Loss—Books of Account.

In an action against an insurance company for the value of a stock of merchandise destroyed by fire, daybooks, ledgers, and other books of account, kept in the usual course of business, showing the amount and value of the goods, are competent evidence, when properly verified or authenticated.

### Same—Original Entries.

The fact that some entries were made by the bookkeeper from temporary slips furnished by salesmen will not affect their character as original entries.

### Same—Errors Affecting Credibility.

The fact that books of account contain some errors affects their credibility, but, in the absence of evidence that the books were fraudulently falsified, will not necessarily render them incompetent.

### Setting Aside Award—Testimony of Arbitrator.

In an action to set aside an award, it is competent for one of the arbitrators (who refused to join in the award) to testify as to acts of partiality and misconduct on part of the other arbitrators.

### Additional Findings—Bill of Exceptions.

Where it is assigned as error that the court refused to make an additional finding, the case or bill of exceptions must show that it contains all the evidence upon the issue upon which the finding was requested.

### Proof of Loss—Waiver.

The rule applied that, where an insurance company objects to the sufficiency of proof of loss on one ground alone, this amounts to a waiver of all other objections.

### Invalidating Award—Evidence.

The evidence considered, and *held* sufficient to invalidate an award on the ground of the partiality and misconduct of the arbitrators.

[1] Reported in 68 N. W. 855.

**New Appraisement—Waiver.**

*Held,* also, that the defendant company had by its conduct waived its right to a new appraisement as a condition precedent to plaintiffs' right of action on the policy.

**Jury Trial—Waiver.**

Also, that by its conduct on the trial it waived its right, if any, to have any of the issues in the case tried by a jury.

**Judgment—Correction—Appeal.**

The fact that the judgment entered by the clerk does not conform to the court's order for judgment cannot be raised by appeal without first applying to the trial court to have the judgment corrected.

Appeal by defendant from a judgment of the district court for St. Louis county, in favor of plaintiffs, entered in pursuance of the findings and order of Ensign, J. Affirmed.

*Kueffner, Fauntleroy & Rice, Allen & Baldwin,* and *J. N. Searles,* for appellant.

*Draper, Davis & Hollister* and *H. J. Grannis,* for respondents.

MITCHELL, J. This was an action on a fire insurance policy for $2,000 upon a stock of merchandise of the alleged value of over $56,-000, upon which there was concurrent insurance for $46,500; the total alleged loss being $37,858.44, of which defendant's proportional share would be $1,561.16, of which $725.25 had been paid, and judgment for the balance of $835.91 was demanded.

The policy contained the usual provisions that upon the occurrence of a loss the plaintiffs should give the defendant immediate notice, and within 60 days after the fire furnish proofs of loss; that the amount of the loss should be ascertained or estimated by the parties themselves, or, if they differed, then by appraisers, one to be selected by each party, the two so chosen to select an umpire; that, if the two appraisers should disagree, their differences should be submitted to the umpire, and the award of any two should determine the amount of the loss; that the parties should pay the appraisers selected by them respectively; that the defendant should not be deemed to have waived any provision of the policy, or any forfeiture thereof, by any act or proceeding on its part relating to such appraisal; that the amount of the loss or damage having been thus ascertained should not become payable until 60 days after notice, ascertainment, estimate, and

satisfactory proof of loss, including an award of appraisers when an appraisal had been required; that no suit or action on the policy for the recovery of any claim should be sustainable until after full compliance with all the foregoing requirements; that the policy should be void in case of any fraud or false swearing by the insured touching any matter relating to the insurance, whether before or after loss.

The complaint alleges that upon the occurrence of the loss the plaintiffs performed all the conditions of the policy, including the rendering of proofs of loss; that, a disagreement having arisen between the parties as to the amount of the loss, they, pursuant to the conditions of the policy, selected two appraisers, who in turn selected an umpire; that the appraiser selected by the defendant and the umpire made an award determining plaintiffs' loss to be $17,602.13, and no more, which award was accepted by the defendant, but rejected by the plaintiffs on the ground of fraud, misconduct, and partiality on part of the appraisers. The complaint then sets out the facts constituting the alleged fraud, misconduct, and partiality on part of the appraisers which it is claimed rendered their award void. It also alleges that the defendant waived the furnishing by plaintiffs of any other or further proof of loss than those already furnished.

Aside from a general denial of all the allegations of the complaint, except as admitted, qualified, or explained, the answer consists of three defenses, viz.: First, a denial of the allegations of fraud, misconduct, and partiality on part of the arbitrators, and an insistence that their award was valid, and that defendant has fully performed and satisfied it by the payment of the $725.25; second, that this sum was paid by the defendant and accepted by the plaintiffs as full payment and satisfaction of all claims or demands under the policy; third, that the plaintiffs were guilty of fraud and false swearing as to the amount and value of their stock and the amount of their loss, which, under the conditions of the policy, rendered it void.

The reply put in issue the new matter contained in the answer, and especially that the plaintiffs had accepted the $725.25 in full satisfaction of all claims under the policy, and alleged that they only accepted it on account as part payment.

Upon the trial the two main issues were as to—first, the alleged fraud, misconduct, and partiality of the appraisers; and, second, the actual amount of plaintiffs' loss. Upon the second issue the contro-

versy was not so much in respect to the amount of damage to goods saved as in respect to the amount and value of goods totally destroyed; the defendant claiming that the value of the latter was trifling, while the plaintiffs claimed that it amounted to between $16,000 and $17,000.

The court found as facts, substantially in accordance with the allegations of the complaint, that the amount of plaintiffs' loss was $37,-858.44, viz. goods totally destroyed $15,741.72, and damage to goods saved $22,116.72; that the arbitrators were guilty of the acts of fraud, misconduct, and partiality alleged; that the $725.25 was paid by the defendant and accepted by the plaintiffs as part payment, and not in full satisfaction, of their claim under the policy; that within the prescribed time the plaintiffs furnished proofs of loss, and, in response to defendant's request, further or supplementary proofs, which were accepted and retained by defendant without further objection. No express finding was made, and none seems to have been asked for, upon the issue as to plaintiffs' fraud and false swearing regarding the amount of their loss. As the burden of proof on this issue was on the defendant, the findings are equivalent to a finding in favor of the plaintiffs. Indeed, no serious attempt seems to have been made on the trial by defendant to maintain this issue by proof.

As conclusions of law the court held that the award was void, and should be vacated, and constituted no bar to this action, and that the plaintiffs were entitled to judgment for $835.30. Upon these findings judgment was entered in favor of the plaintiffs for that sum, but not in terms adjudging the award void.

Defendant's assignments of error are 70 in number. They have been so unnecessarily multiplied, and so many of them are so palpably without merit, that we cannot be expected to consider each separately. All we feel called upon to do is to make special mention only of the most important ones, and to dispose of the remainder by merely saying that they are without merit.

1. The first 47 relate to various rulings of the court upon the trial as to the admission or exclusion of evidence. Most of these that are worthy of notice have reference to the admission of plaintiffs' books of account, consisting of their journal, ledger, and invoice book, which may all be considered together. While this class of evidence had some bearing on the question of the misconduct and partiality of the

appraisers, as tending to show that they arbitrarily and willfully refused to examine and consider important and material evidence, yet the main purpose of it was to prove the amount of plaintiffs' actual loss.

They introduced—first, an inventory of stock on hand, taken in the regular course of business on January 1, 1893; second, their journal and ledger, also kept in the regular course of business, and especially the merchandise account, purporting to contain an account of the amount and value of all merchandise bought or sold between the date of the inventory and the date of the fire, which occurred December 13, 1893. In connection with and as corroborative of these books, the plaintiffs also introduced the original invoices of goods bought between January 1 and December 13, 1893, which the evidence tended to show were carefully compared with the goods upon their arrival and then, in the regular course of business, entered in the invoice book. Inasmuch as the goods were charged to merchandise at their cost price and credited at their selling price, this documentary evidence was supplemented by testimony as to the average profit over cost at which the goods were sold.

If plaintiffs' books were correctly kept, this evidence would show the amount and value of the merchandise on hand at the date of the fire, and a comparison of this with the amount and value of the goods saved would show the amount of plaintiffs' loss. If the proper foundation was laid, there can be no doubt of the competency of this kind of evidence. Indeed, in case of a total or partial loss of a large and miscellaneous stock of merchandise it is of necessity the only kind of evidence that can be produced. Books of account, or "shop books," as they are often called, are usually introduced in evidence only to prove services performed or articles delivered to the person named in the entries in the course of dealings between the parties creating the relation of debtor and creditor. But the competency of such evidence in cases like the present, and for the purpose for which these books were introduced, is fully recognized by the authorities. Insurance Co. v. Weide, 9 Wall. 677; Id., 14 Wall. 375. This rule is founded on considerations of necessity, for ordinarily there is no other or better evidence in existence.

It is claimed, however, that these books were not verified so as to lay the proper foundation for their introduction in evidence. After a

careful examination of the record, we are satisfied that the preliminary proof substantially fulfilled all the requirements of G. S. 1894, § 5738, and hence that they were properly admitted, if the provisions of that statute apply to books of this kind. Counsel's contention is that this section only applies where the books are offered to prove moneys paid, goods delivered, or services performed to or for the party charged therewith; that as these books were not of that kind, or offered for that purpose, they should have been proved according to the common law, which required the supplementary oaths of all the different clerks or bookkeepers who made the entries, except where it was made to appear that they were dead or were out of the state, and that their testimony could not be obtained. Although such books may not come within the terms of the statute, yet as no reason now suggests itself to us why, in the nature of things, the same authentication should not be sufficient in all cases where books of account kept in the regular course of business are competent evidence, it may be a question whether the courts would not be justified in adopting by analogy the mode of authentication provided by the statute. But we do not decide that question, as it is not necessary to do so in this case.

When plaintiffs' journal was offered in evidence the objection made to its introduction was that it was "not properly authenticated under the statute." The ledger was then offered in connection with the journal, and the two were admitted together, without any other or further objection. Under this objection the point is not now open to the defendant to claim that the books were not authenticated according to the common law. The objection was that they had not been authenticated as required by the statute, thereby assuming and conceding that the statute applied. Immediately following the introduction of the journal and ledger, the plaintiffs offered in evidence their inventory and invoice book. The only objection made to the admission of this book, going to the question of preliminary proof, was that it was "not properly authenticated." If the statute was applicable to the journal and ledger, it was equally so to this book. There was nothing to advise the court that the objection was not the same as that made to the journal and ledger, to-wit, that it was not authenticated as required by statute, and nothing to suggest that counsel claimed that the common law, and not the statutory, mode

of authentication was applicable. The court having been led to understand that counsel recognized the statute as applicable, and that their objection merely was that its requirements had not been complied with, they cannot now shift their ground, and claim that the statute was inapplicable.

The fact that some of the entries were made by the bookkeepers from temporary slips furnished by salesmen did not affect their character as original entries. Paine v. Sherwood, 21 Minn. 225; Webb v. Michener, 32 Minn. 48, 19 N. W. 82.

It appears that the books were not kept according to the most approved business methods; that they contained errors, notably two of great magnitude in the merchandise account as posted in the ledger, although entries elsewhere in the books furnished the means of detecting and correcting these errors. The books are not before us, but, so far as the evidence returned discloses, it would justify the conclusion that they were honestly kept, in the ordinary course of business, as a record of the daily business of the plaintiffs. There was no evidence that would have justified, certainly none that would have required, a finding that the books were fraudulently or intentionally falsified. The competency of such books is a question for the court, to be determined from the appearance and character of the books themselves, as well as the supplementary evidence of authentication. The mere existence of some errors, in the absence of anything showing that they were the result of fraud, would not necessarily render the books incompetent, although it would undoubtedly affect their credibility. Cogswell v. Dolliver, 2 Mass. 217; Mathes. v. Robinson, 8 Metc. (Mass.) 269; Rodenbough v. Rosebury, 24 N. J. Law, 491. We cannot say that the court erred in admitting the books in evidence.

2. With a view to invalidating the award, the plaintiffs called as a witness the dissenting arbitrator, who testified to certain acts and words of the other arbitrator during the pendency of the submission tending to show partiality and misconduct on his part. The only thing that we discover in the testimony of this witness which was at all material, or which, if incompetent, could have prejudiced the defendant, was that part tending to show that the other arbitrator unreasonably refused to examine the books of the plaintiffs for the purpose of ascertaining what goods plaintiffs had on hand at the

time of the fire and seemed to have prejudged the case by assuming that the books had been falsified and were unworthy of any credence. This evidence was objected to on the ground that one appraiser [arbitrator] cannot testify to "any facts or circumstances relating to the conduct of any of the appraisers with reference to this award, on the ground that one appraiser cannot testify to facts impeaching the award." :

It will be observed that this evidence was not offered for the purpose of explaining or altering the award, but with a view to invalidating it altogether; nor was it calling on an arbitrator to testify as to the grounds of his decision, but as to extrinsic facts tending to show misconduct on the part of one of the arbitrators who joined in making the award. It is also to be observed that the witness was not called to impeach his own decision, for he had never joined in the award. It is not necessary here to go into a consideration of the general subject as to how far an arbitrator may be called on to testify respecting matters connected with the reference. We apprehend no case can be found which holds that an arbitrator (especially one who has refused to join in the award) is incompetent to testify as to acts of misconduct committed by another arbitrator. If such was the law, the grossest fraud, corruption, or partiality might prevail, and its victim have no relief. The rule, founded on considerations of public policy, that no affidavit shall be received from a juror to impeach his verdict, is not applicable, to its full extent, to arbitrators.

3. Assignments of error Nos. 48 to 57, inclusive, relate to the refusal of the court to make certain additional findings. These cannot be considered, for the reason that the bill of exceptions does not purport to contain all the evidence upon the questions as to which the additional findings were requested. This is just as necessary where exception is taken to the refusal of the court to make a particular finding as where exception is taken to one that is made, upon the ground that it was not justified by the evidence. Groomes v. Waterman, 59 Minn. 258, 61 N. W. 139. Moreover, the findings that were made covered all the issues in the case, and those requested related to mere matters of evidence.

4. Assignments of error Nos. 58 to 64, inclusive, are to the effect that certain findings were not justified by the evidence. So far as

66 M.—10

these findings were material and responsive to the issues made by the pleadings, they were justified by the evidence.

The finding that the defendant accepted and retained the original and supplemental proofs of loss without further objection was amply justified by the evidence, for more reasons than one. The fire occurred December 13. The parties entered into a written submission to arbitration as to the amount of the loss on December 27, which was long before the time for furnishing proofs of loss had expired. This of itself constituted a waiver of furnishing proofs as to the amount of the loss. Carroll v. Girard Fire Ins. Co., 72 Cal. 297, 13 Pac. 863.

Nevertheless, the plaintiffs, having rejected the award (made January 18), did on or about February 2 furnish what purported to be formal proofs of loss, in accordance with the terms of the policy. To these proofs the defendant on February 16 made certain objections, the main burden of which was that the amount of loss claimed was not in accordance with the award, notifying the plaintiffs that the company did, and at all times would, insist "that any claim under said policy for loss and damage by said fire shall be on the basis of said award, and on no other basis." To obviate certain other objections to the form of the proofs, the plaintiffs on February 27 furnished supplementary proofs which were received by the defendant on March 2. In response thereto the defendant wrote to plaintiffs on March 22 that these proofs were not accepted as satisfactory because "the amount claimed to be due from this company under its policy is greatly in excess of this company's proportion of your loss as fixed by the award of appraisers chosen as provided by said policy." This was the only objection made to the proofs, and, according to a familiar rule, was a waiver of all others.

The bill of exceptions does not purport to contain all the evidence as to whether the $725.25 was paid by the defendant and accepted by the plaintiffs in full of their claim, or only on account. Hence the question whether the finding on that issue was justified by the evidence cannot be considered.

The findings as to the fraud, partiality, and misconduct of the two arbitrators who made the award are of evidentiary, rather than of the ultimate, issuable, facts. We do not think that the sufficiency of the evidence to support these findings is properly presented by the

record, for the reason that the bill of exceptions does not purport to contain all the evidence on that issue, except upon one specific act of alleged misconduct. But, so far as these findings are material, they were justified by the evidence which is contained in the record, and are amply sufficient to avoid the award.

The arbitrator chosen by the defendant was receiving from it for his services the very liberal compensation of $50 per day. The evidence tends to show that he seemed to have been actuated throughout with the idea that, because he was chosen by the company, it was incumbent on him to act as its representative and do what he could for its interests. He also seems to have been mainly instrumental in selecting as umpire a confessedly incompetent person, whose action he practically dominated, thus virtually making himself sole arbitrator. The evidence also tends to show that he entered upon the discharge of his duties with the preconceived and fixed opinion (which he was quite free to express) that the fire, as well as plaintiffs' loss, was fraudulent, and that their books had been purposely falsified. It also tends to show that he had been informed in advance (perhaps by defendant's adjuster) of the two errors, already alluded to, in plaintiffs' books, and that he examined their books merely enough to verify the existence of these errors, and then refused to examine them further, and proceeded to appraise the value of the goods totally destroyed at $650, upon what could have been little more than a mere guess. This was neither the animus nor conduct due from an arbitrator, whose duty it is, by whomsoever chosen, to decide the matters submitted to him impartially and with the same judicial fairness as a judge or juror.

The award of arbitrators should not be lightly set aside. Neither are they bound by the same strict rules as courts, in their investigations. But in view of the findings, and the evidence justifying them, showing that the award was virtually the decision of one man, who seems to have prejudged the case and acted as the partisan of one of the parties, we think the court was amply justified in holding that the award should be set aside.

As the bill of exceptions does not purport to contain all the evidence as to the value of the stock before the fire, the sufficiency of the evidence to support the finding on that issue cannot be considered. But inasmuch as the answer admits that the stock was worth much more

than the amount of the loss as found by the court, and as there is no error assigned as to the latter finding, we fail to see how the finding of the court as to the value of the stock is at all material.

5. The remaining assignments of error present only one question worthy of special mention, viz. that, if any judgment in favor of the plaintiffs should have been rendered, it should have only been one setting aside the award. This contention is based on two grounds: (1) that the defendant was entitled to a jury trial as to the amount of the loss; (2) that, even if the award was properly set aside on account of the misconduct of the arbitrators, the stipulation in the policy for the determination of the amount of the loss by appraisers still remained in force, and that a new award was a condition precedent to a right of action on the policy.

The action was brought to set aside the award and to recover on the policy. There can be no doubt but that all this relief may be granted in the same action. Assuming that the defendant was entitled to a jury trial as to the amount of the loss, this was a right which it could waive. The defendant expressly stipulated that the verdict of the jury on a former trial might be set aside, and the cause be submitted to the court, on the evidence already taken, for the entry of such judgment as the parties were entitled to. It is true that in this stipulation the defendant reserved the right to object to the entry of any judgment other than one determining the validity or invalidity of the award; also that on the trial its counsel objected to the admission of any evidence as to the amount of the loss. But this reservation and objection evidently proceeded upon the theory that even if the award was set aside the amount of the loss must be determined by new appraisers, and had no reference to the right of trial by jury. If the defendant desired a jury trial of any of the issues, it should have distinctly advised the court of the fact. See Greenleaf v. Egan, 30 Minn. 316, 15 N. W. 254; Lace v. Fixen, 39 Minn. 46, 38 N. W. 762; Peterson v. Ruhnke, 46 Minn. 115, 48 N. W. 768; Smith v. Barclay, 54 Minn. 47, 55 N. W. 827.

6. According to the rule laid down in the leading case of Scott v. Avery, 5 H. L. Cas. 811, as well as in the decisions of this court in Gasser v. Sun Fire Office, 42 Minn. 315, 44 N. W. 252, and Mosness v. German-Am. Ins. Co., 50 Minn. 341, 52 N. W. 932, undoubtedly the provision in this policy for the determination of the amount of the

loss by arbitration was a condition precedent to a right of action on the policy, and not a mere collateral stipulation to enter into a submission.    The law also, undoubtedly, is that under such a provision, if an award is set aside for misconduct of the arbitrators, not participated in or caused by the insurer, the agreement for an appraisement still remains in force, and a new appraisement, unless it had become impossible, would still be a condition precedent to a right of action on the policy, unless waived.    Hiscock v. Harris, 80 N. Y. 402; Carroll v. Girard Fire Ins. Co., supra;  Hood v. Hartshorn, 100 Mass. 117;  Thorndike v. Wells Memorial Assn., 146 Mass. 619, 16 N. E. 747; Davenport v. Long Island Ins. Co., 10 Daly, 535;  Uhrig v. Williamsburgh City Fire Ins. Co., 101 N. Y. 362, 4 N. E. 745.    Assuming, without deciding, that this award failed without fault on part of the defendant, yet its conduct after plaintiffs rejected the award clearly constituted a waiver of the right to a new appraisement.    Not only did it never ask for or even suggest a new appraisement, but in its communications with plaintiffs it expressly insisted on the award already made, and notified them that any claim under the policy must be on that basis, and no other.    It took the same position in its answer.    May, Ins. § 496b.

The fact that the judgment did not conform to the court's order for judgment, by in terms adjudging that the award be set aside, can not be considered, for the reason that no application has ever been made to the trial court to have the judgment corrected.

Judgment affirmed.