READ & TRAVERSY AND J. A. CAMPBELL, Trustee, v. THE STATE INSURANCE COMPANY, Appellant.

**Insurance:** INCUMBRANCES: *Lease.* The lease of the building in which the insured stock of goods is situated, if an incumbrance, is not within condition of the policy rendering it void, if, without written consent indorsed thereon, the property is incumbered by mortgage or lien,—where the policy expressly requires *existing* incumbrances at the time of making the application, to be set forth in the application,—and that consent shall be required as to future incumbrances, only.

**ARBITRATION:** *Condition precedent.* Arbitration is not made a con-dition precedent to an action on a policy of insurance by the mere provision thereof that a difference of opinion as to loss or damage shall be submitted to arbitration, and that the award shall be binding as to the amount of loss or damage.

**ESTOPPEL.** Either party to an agreement to arbitrate differences who intentionally prevents or unreasonably delays the stipulated method of adjudicating their rights, will not be permitted to plead failure to arbitrate as a defense to an action subsequently brought on the original cause of action. Citing *Powers Dry Goods Co. v. The Imperial Fire Insurance Co* , 48 Minn. 380 (51 N. W. Rep.) 123); *Uhrig v. The Insurance Co.*, 101 N. Y. 362 (4 N. E. Rep. 745).

**Same.** A party charged with the duty of choosing an appraiser to determine differences of opinion as to loss or damage under a policy of insurance is bound to choose an appraiser who will act with reasonable promptness in naming an umpire, if one becomes necessary, and in the submission of the dispute, or, on his failure to do so, to replace him with another; and the other party, if

| | |
|---|---|
| 103 | 307 |
| 104 | 170 |
| 104 | 410 |
| 103 | 307 |
| 107 | 383 |
| 103 | 307 |
| a110 | 337 |
| 110 | 432 |
| 103 | 307 |
| 111 | 597 |
| 103 | 307 |
| 112 | 81 |
| 112 | 609 |
| 103 | 307 |
| 113 | 683 |
| 113 | 733 |
| 103 | 307 |
| 114 | 20 |
| 114 | 246 |
| 103 | 307 |
| 131 | 56 |
| 103 | 307 |
| 136 | 473 |
| 103 | 307 |
| 137 | 502 |
| 103 | 307 |
| 139 | 138 |
| 103 | 307 |
| 144 | 625 |

without fault of his own, will not be made to suffer from his dereliction in that respect.

EVIDENCE. It is competent, for the purpose of ascertaining the amount of insured goods in a store at the time of the fire, to show the last previous invoice, the goods bought and the amount received on sales in the mean time, and the average profit on such sales.

*Same.* Plaintiff in an action on a policy of insurance on a stock of goods may testify that, after the fire, he tried to sell the damaged goods, and as to what per cent. of the cost price he could get therefor, as the defendant may develop by cross-examination the facts in relation to the depreciation, or other matters affecting the value of the testimony.

*Same.* An insurance company which, for the purpose of showing the amount of goods in stock at the time of the fire, has, on cross-examination of plaintiff's witness, entered into the subject of the proceeds from retail sales during a certain period, cannot complain of the testimony of the witness on re-direct examination, as to the cost incurred in making such sales.

HARMLESS ERROR. Where the court instructs that .arbitration is a condition precedent to suit on an insurance policy, and, by the terms of the policy, arbitration is not a condition precedent, defendant is not prejudiced by thus requiring plaintiff to prove more than the law requires.

LIMITATION OF ACTIONS. A policy of insurance provided that no action thereon should be maintained unless commenced within six months after the fire. *Held,* that the limitation did not begin to run until sixty days after notice of proof of loss were furnished the company, which was the time of payment fixed by the policy.

**Special Interrogatory.** To require the submission of an interrogatory to the jury under Code 1873, section 2807, the fact to be found must be one inhering in, and necessary to determine in arriving at, the general verdict, and the method or elements considered in reaching the ultimate facts cannot be called for by special interrogatories.

RULE APPLIED. Under Code 1873, section 2807, providing that a special verdict shall find only the ultimate facts as established by the evidence, special interrogatories, in an action on an insurance policy, calling for the damages to goods in different parts of the store, and the value of those totally destroyed, are properly refused, as calling for the method or elements considered in reaching the facts.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, OCTOBER 19, 1897.

ACTION on insurance policy for damages to stock of goods, occasioned by fire. Trial to jury, verdict and judgment for plaintiffs, and defendant appeals.— *Affirmed.*

*O. B. Ayres, Earle & Prouty,* and *McVey & Cheshire* for appellant.

*Carroll Wright* and *Cummins, Hewitt & Wright* for appellees.

LADD, J.—The policy contains a clause concerning the property insured, in these words: "Or if, without written consent hereon, the title of the property is transferred or changed, in whole or in part (except by death of the insured); or if same, or any part thereof, is incumbered by mortgage, lien, contract or sale, or otherwise, or is assigned for the benefit of creditors; or any existing incumbrance at the time of making application is not set forth in the application; or if there is any other insurance, valid or invalid; or if there is any change in the occupant or occupancy of the premises insured,  *  *  *  then, and in every such case, this policy shall be void." The goods insured were in a building leased February 15, 1893, for a term of three years, five and one-half months, at the rental of two hundred and eight dollars and thirty-three cents per month, payable in advance. The policy was issued March 14, 1893, for one year. The fire occurred August 18 following, and this suit was begun March 22, 1895. If, then, the lease constituted an incumbrance on the property, it existed at the time

the policy issued, and does not come within the prohibition of this clause. There is no room for construction, as the policy, in unambiguous terms, provides that existing incumbrances must be disclosed in the application, and future incumbrances permitted by the company, else it will be void. Nor can any other intention be imputed to the defendant. The greater part of the merchandise of the country is kept in buildings leased for terms, and a lease is not commonly understood to be an incumbrance. In preparing its form of contract the defendant could not have had in view the invalidity of a large portion of its insurance for which adequate compensation had been received. Nor do the cases relied on sustain the contention now made. The instruments considered in *Peet v. Insurance Co.*, 7 S. D. 410 (64 N. W. Rep. 206, and *Insurance Co. v. Vanlue*, 126 Ind. 410 (26 N. E. Rep. 119), are construed to be mortgages, and the rulings rest on that ground alone. It is well settled that such contracts must be strictly construed against the insurer, and a forfeiture avoided, if possible. If the lien for rent to accrue or for unpaid taxes,—created by statute,—is to invalidate a policy of insurance, it should so provide in unmistakable terms.

II. Was the action barred by the contract of limitation contained in the policy? It will be noticed the suit was begun within six months after the proofs of loss were furnished, but more than that time after the fire. The policy stipulates that "no suit or action against the company for the recovery of any claim under or by virtue of this policy shall be sustained in any court of law or equity unless commenced within the term of six months next after the fire shall have occurred." In *Ellis v. Insurance Co.*, 64 Iowa, 507, the policy provided that "action shall be commenced within six months next after the loss shall occur." The court held the period began to run when the cause of action had accrued; i. e. sixty days after

the notice and proof of loss had been furnished. This ruling is expressly approved in *Miller v. Insurance Co.*, 70 Iowa, 704, and finds support in *Steen v. Insurance Co.*, 89 N. Y. 321; *Insurance Co. v. Fairbank*, 32 Neb. 750 (49 N. W. Rep. 711); *Barber v. Insurance Co.*, 16 W. Va. 658; *Chandler v. Insurance Co.*, 21 Minn. 85. Authorities to the contrary may be mentioned. *Travelers' Ins. Co. v. California Ins. Co.*, 1 N. D. 151 (45 N. W. Rep. 703); *Johnson v. Insurance Co.*, 91 Ill. 92; *Chambers v. Insurance Co.*, 51 Conn. 17; *Insurance Co. v. Wells*, 83 Va. 736 (3 S. E. Rep. 349); *Riddlesbarger v. Insurance Co.*, 7 Wall. 386; *Law v. Association*, 94 Mich. 266 (53 N. W. Rep. 1104). The policy considered in *McConnell v. Association*, 79 Iowa, 757, stipulated that no action should be maintained unless "commenced within six months after the happening of the death on account of which the action is brought." The court, through Beck, J., said: "It is a familiar and just rule, recognized by the courts, that a bar created by a statute or by the contract to an action for a breach of its conditions by reason of the lapse of time will not commence to run until the right of action accrues; that is, the plaintiff must have the full time given by the statute or contract after his right of action accrues, in which to commence his suit." The action was begun more than six months after death, but within that time after the right of action accrued, and held to be in time. This ruling is approved in *Matt v. Association*, 81 Iowa, 135. These cases are decisive. The period must be held to have commenced to run sixty days after the notice and proof of loss were furnished the defendant,—the time of payment fixed by the policy. Parties may waive the limitation fixed by statute, and adopt one for themselves, if reasonable; but, in cases like this, the time agreed upon will be construed to begin to run when the right of action accrues. That the rule is a wholesome one is illustrated by an examination of many of the cases cited. In some

of them a strict construction of the language employed would cut off all recovery, and in others leave the time limited with which an action might be brought, unreasonably short. In this state the insured has sixty days within which to furnish the company notice and proof of loss, and may not maintain an action within ninety days thereafter. *Quinn v. Insurance Co.*, 71 Iowa, 615. This would leave one month only within which suit might be brought. The property involved in this controversy was covered by policies issued by twenty-four different companies, and the length of time required to begin so many actions need only be suggested. Were the question before this court for the first time, we might deem it more appropriate for the legislature to establish such a rule; but as it is not inimical to justice, and may well be presumed to have been followed in making contracts throughout the state for many years, we are content to adhere to it. It finds support in *Hong Sling v. Insurance Co.*, 8 Utah, 135 (30 Pac. Rep. 307); *Insurance Co. v. Davis*, 40 Neb. 700 (59 N. W. Rep. 698); *Friezen v. Insurance Co.*, 30 Fed. Rep. 352. To the contrary, see *Meesman v. Insurance Co.*, (Wash.) 27 Pac. Rep. 77 *McElroy v. Insurance Co.*, 48 Kan. Sup. 200 (29 Pac. Rep. 478); *Hart v. Insurance Co.*, 86 Wis. 77 (56 N. W. Rep. 332).

III. Was arbitration a condition precedent to the bringing of this action? The policy contains this provision: "If differences of opinion shall arise between the parties hereto as to the amount of loss or damage, the subject shall be referred to two disinterested and competent men, each party to select one (and, in case of disagreement, they to select a third), who shall, under oath, ascertain, estimate, and appraise such loss or damage separately; and their award in writing shall be binding on the parties hereto as to the amount of loss or damage, but shall not decide the liability of the company under this policy." There

is nothing in the policy making submission to arbitration a condition precedent to the payment of the loss or to the maintenance of an action, nor can such a condition be inferred from its terms. The authorities recognize the rule as stated by Sir George Jessel, M. R., in *Dawson v. Fitzgerald*, 1 Exch. Div. 257: "There are two cases where such a plea as the present is successful: *First*, where the action can only be brought for the sum named by the arbitrator; *secondly*, where it is agreed that no action shall be brought until there has been an arbitration, or that the arbitration shall be a condition precedent to the right of action. In all other cases where there is, first, a covenant to pay, and, secondly, a covenant to refer, the covenants are distinct and collateral, and the plaintiff may sue on the first, leaving the defendant to bring an action for not referring," etc. This court has recognized the right of parties to bind themselves to make payment of a sum to be fixed or estimated by an arbitrator or third person. *Flynn v. Railway Co.*, 63 Iowa, 490; *Ross v. McArthur*, 85 Iowa, 203; *McNamara v. Harrison*, 81 Iowa, 486. Also the right to make arbitration a condition precedent to the maintenance of an action. *Zalesky v. Insurance Co.*, 102 Iowa, 613. A mere provision in the policy, however, that, in event of a disagreement, the amount of damage shall be ascertained by arbitrators, will not prevent the assured from maintaining an action, unless arbitration is made, by the terms of the policy or necessary inference therefrom, a condition precedent. In such a case the agreement to arbitrate is collateral to the main purposes of the policy,—an independent agreement,—a breach of which, while it will support a separate action, cannot be pleaded in bar to a suit on the principal contract. *Hamilton v. Insurance Co.*, 137 U. S. 370 (11 Sup. Ct. Rep. 133); *Insurance Co. v. Pulver*, 126 Ill. 329 (18 N. E. Rep. 804); *Reed v. Insurance Co.*, 138 Mass. 572; *Canfield v. Insurance*

*Co.*, 55 Wis. 419 (13 N. W. Rep. 252); *Seward v. City of Rochester*, 109 N. Y. 164 (16 N. E. Rep. 348); *Insurance Co. v. Alvord*, 9 C. C. A. 623 (61 Fed. Rep. 752); *Lumber Co. v. Insurance Co.*, 101 Iowa, 514. See *Gere v. Insurance Co.*, 67 Iowa, 272. The condition considered in each of the above cases was, in substance, like that set out, and in each adjudged not to require arbitration before bringing suit. In the authorities cited and relied on by appellant, arbitration is either made a condition precedent by the express terms of the contract or by necessary inference therefrom. Here there is no such provision in the policy, and the agreement to arbitrate must be regarded as independent, and repudiated by the beginning of this action. The remedy open to the defendant was not a plea in bar, but in an action for breach of contract to refer to appraisers. The court erroneously ruled that arbitration was a condition precedent.

IV.     Each party selected an appraiser on August 26, 1893, and these were unable to agree upon an umpire. September 11 following, defendant replaced the party selected by it with another, but the attempt of these to fix upon a satisfactory person also failed. The plaintiff declared, on the sixteenth of the same month, it would proceed with the arbitration no further, but afterwards said, if there was no delay, the appraisers might proceed with one Redstone as umpire. When it was learned Redstone was about to leave for Chicago, plaintiff refused to submit the matter at all. A great part of the evidence and a very voluminous correspondence between the attorneys was introduced bearing on the question as to whether the plaintiff was justified in refusing to proceed further with the arbitration. The law seems to be well settled that, if either party to an agreement to arbitrate intentionally prevents or unreasonably delays the stipulated method of adjusting the rights of the parties, he

will not be permitted to plead failure to arbitrate as defense to an action subsequently brought. *Dry Goods Co. v. Insurance Co.*, 48 Minn. 380 (51 N. W. Rep. 123); *Uhrig v. Insurance Co.*, 101 N. Y. 362 (4 N. E. Rep. 745). The arbitrator, by whomsoever selected, represents neither party in the work of determining the issues submitted, but is bound to act impartially, and with no other purpose than that of arriving at a just conclusion. In selecting an umpire, he owes no other duty to the party appointing than that of promptly securing an impartial and capable person to act in that capacity. Either party may well be permitted to state valid objections to any person under consideration for such position, but may not control therein, or unduly influence, either arbitrator. If an umpire is not chosen, owing to the interference of either party, with the purpose of preventing or delaying the submission unreasonably, this ought to estop him from pleading no arbitration, because he has rendered it impossible by his own acts. Nor will an arbitrator be permitted, on his own motion, by wilfully or negligently postponing the selection of an umpire, to unreasonably delay the adjustment of the controversy; else the very purpose of arbitration, which is the speedy and inexpensive settlement of disputes, would be defeated. A person cannot be tied up forever, without his fault, by an ineffectual arbitration. It is better to hold the party appointing to the duty of choosing an appraiser who will act with reasonable promptness in naming an umpire, and in the submission of the dispute, or, on his failure so to do, replace him with another, than that the other party to the controversy shall suffer without any fault of his own. This is not in conflict with the rule that, when the award is set aside because of misconduct of arbitrators, a new appraisement, if not impossible, will still be necessary. See *Levine v. Insurance Co.*, 66 Minn. 138 (68 N. W. Rep.

855); *Hiscock v. Harris*, 80 N. Y. 402; *Carroll v. Insurance Co.*, 72 Cal. 297 (13 Pac. Rep. 853). Here, there is a failure to act at all, and a party may well be required to name an appraiser who will proceed to the performance of his duties as such without unnecessary delay. The instructions of the district court were in harmony with these views, and are approved as correctly stating the law. See *McCullough v. Insurance Co.*, 113 Mo. 606 (21 S. W. Rep. 207); *Chapman v. Insurance Co.*, 89 Wis. 572 (62 N. W. Rep. 422).

V. The defendant urges that the finding of the jury that Kenyon, the appraiser selected by it, unreasonably delayed the choice of an umpire, is not sustained by the evidence. We shall not take the trouble to determine this, for the reason that, had the finding been different, the plaintiff would have been entitled to recover. The only question proper for the consideration of the jury was the amount of damages to be allowed. In requiring the plaintiff to establish an excuse for failure to arbitrate, the court imposed an additional affirmative issue on it to establish; but this was insisted on by the defendant, and many instructions asked by it submitting that issue, so that it is not in a situation to complain of any prejudice occasioned by the holding of the court that arbitration was a condition precedent. Nor did any result. The court correctly instructed on that issue, and, by submitting it to the consideration of the jury, announced the law as more favorable to the company than it was entitled to have it. The defendant was not prejudiced by the ruling that plaintiff must prove more than the law required. See *Phoenix v. Lamb*, 29 Iowa, 352; *Hahn v. Miller*, 60 Iowa, 96; *Miller v. Root*, 77 Iowa, 545.

VI. It is also insisted that the finding of the jury that the damage to the stock of goods occasioned by the fire was thirty-four thousand dollars has not sufficient support in the evidence. The testimony of Read and

Traversy warranted this finding. Other reputable witnesses placed the damages at only a fraction of such amount. The value of the evidence offered depended very largely on the familiarity of the witnesses with the goods, and the attention given to them before and after the fire. While we might not have placed the damages as high as the jury did, the evidence is such as to preclude any interference with the verdict.

VII. For the purpose of ascertaining the amount of goods in the store at the time of the fire, the plaintiff was permitted to show the last previous invoice, the goods bought in the meantime, the amount received on sales in the meantime, and the average profit on such sales. Of this the defendant seriously complains, but suggests no other way of fixing the value of the merchandise before the injury. It is the usual way of determining such value, and often the only method of fixing the damage in event of the partial or total loss of a large and miscellaneous stock of merchandise. If the statements and computations are correct, a comparison with the amount and value of the goods immediately after the fire will fix the loss suffered thereby. See *Levine v. Insurance Co., supra; Insurance Co. v. Weide,* 9 Wall. 677; *Insurance Co. v. Weides,* 14 Wall. 375. The possibility of a great many other dispositions of the property is suggested by counsel, but the evidence tended to show none other had been made. So with reference to other causes of depreciation. These were undoubtedly the subject of inquiry, and the defendant had the opportunity of calling them to the attention of the jury either in cross-examination or by such evidence as it might deem proper to offer.

VIII. Read testified that after the fire he tried to sell the damaged goods, and was asked what per cent.

of the cost price he could get. It is said that this was improper, because the cost price might not represent the true value, as the goods may have depreicated by being shelf-worn, or out of style, and for other reasons. It is sufficient to say that the examination followed the well-known custom of merchants generally in making all computations from the cost price; and, had there been any depreciation owing to the numerous causes suggested, the defendant had ample opportunity for developing them on cross-examination.

IX. In cross-examination Read testified that of the stock twenty-four thousand, four hundred and ninety-six dollars and eighty-two cents was received for goods sold between September 25, 1893, and March following, and merchandise invoicing seventeen thousand dollars then remained. The evident purpose was to show that the goods actually sold for more than the value fixed by him. The plaintiff, in re-direct examination, was then permitted to show the cost incurred in making these sales. Certainly, if the selling price at retail may be considered in fixing the value, the expense of making such sales ought to be taken into consideration. The defendant, having elected to enter such an investigation, cannot be heard to complain because followed into the same field of inquiry.

X. Special interrogatories, calling for the damage to goods in different parts of the store, and the value of those totally destroyed, were asked by the defendant, and refused. The ruling was not erroneous, as the inquiries were not for ultimate facts material to the issue. It was simply an attempt to require the jury to state the different items of damage resulting from the same cause, making up the amount of their verdict. A special verdict must present the ultimate facts as established by the evidence. Section 2807, Code 1873. "Ultimate," as defined by Webster, means: "Last

in the train of progression or consequences; tended toward by all that precedes; arrived at as the last result; final." The fact to be found must be one inhering in and necessary to determine in arriving at the general verdict. The method or elements considered in reaching the ultimate facts cannot be called for by special interrogatories. See *Lawson v. Railway Co.*, 57 Iowa, 672; *Bonham v. Insurance Co.*, 25 Iowa, 334; *Savings Bank v. National Bank*, 101 Iowa, 530; *Pheonix v. Lamb, surpa; Hawley v. Railway Co.*, 71 Iowa, 717; *Scagel v. Railway Co.*, 83 Iowa, 380; *Dreher v. Railway Co.*, 59 Iowa, 599.

XI.   The seventh instruction is not open to the criticisms urged, but contains a clear and full statement of the correct measure of damages. The jury are there told, in substance, to determine the reasonable market value of the goods totally destroyed or rendered worthless, and then the amount of the damage or depreciation, if any, to the market value of the goods not destroyed or rendered worthless, and, in doing so, to consider the purposes for which plaintiff owned and kept the merchandise; and, after cautioning the jury only actual damages could be allowed, proceeded: "You are instructed that, if the goods insured could not, in ordinary course of trade or business, be sold at as high prices after as before the fire, such difference was an actual damage, for which the plaintiffs are entitled to recover; and the aggregate of these sums will be the amount of plaintiff's loss or damage." It is said the measure of damages is the difference between the market value of the goods immediately before and after the fire.   That is what the court told the jury.   The fair market value is what property will bring in the ordinary course of trade or business.   It is claimed depreciation from other causes might be considered under this instruction.   But, in stating the issues, the jury were told that damages occasioned by fire were claimed,

and such damages only were under consideration. If the goods decreased in value from cost from other causes, this would be taken into account in determining what they were worth at that time. All the evidence was directed to fixing the value before and after the fire. The jury could not have failed to understand this instruction to mean all defendant claims it should.

XII. Many other matters are discussed, but do not require consideration. The arguments of appellant are prolix, and many of the objections urged are captious. Without reviewing them in detail, we may say they are without merit. The judgment is AFFIRMED.