GREEN BAY LUMBER COMPANY, Plaintiff, v. INDEPENDENT
    SCHOOL DISTRICT OF ODEBOLT, IOWA, ET AL., De-
    fendants.

**Public building contract:** PAYMENTS: ARCHITECT'S CERTIFICATE.
1 Where a contract for building a school house provided that payment should be made to the contractor on the certificates of the architect, the district was protected in making payments according to contract as against material men who did not file their claims as provided in Code, section 3102, until after the payments were made, even though the certificates of the architect were not made upon his own. personal knowledge of the work.

**Subcontractor's liens.** The statute does not authorize a lien in favor
2 of a material man upon a public building or the funds due a contractor, and the corporation is under no obligation to protect him prior to the filing of his claim as provided in Code, section 3102.

**Building contract:** ABANDONMENT: COMPLETION: CERTIFICATE OF
3 COST. Where a building contract provided that upon abandonment of the work, the school district might complete the same, and that the architect's certificate of the cost thereof should be conclusive, the amount so certified was binding upon third parties in the absence of fraud.

**Liability for unused material.** Where a building contract provides
that on abandonment of the work the owner may take possession,
including material on hand, and complete the same, he is not
personally liable to material men for unused material sold the
contractor and on hand at time of abandonment.

**Mechanic's liens: JUDGMENT.** In an action to enforce a mechanic's
lien, judgment may be entered against a contractor though the
lien is denied.

*Appeal from Sac District Court.*— HON. S. M. ELWOOD,
Judge.

WEDNESDAY, OCTOBER 19, 1904.

ON July 7, 1899, the defendant school district entered
into a contract in writing with defendant C. H. Weaver for
the erection of a public school house, the material provisions
of such contract being as follows: The building to be con-
structed and completed according to architect's plans and
specifications; the said Weaver to furnish all labor and
material and to be paid therefor by the district the sum
of $16,179, payments of such contract price to be made in
installments, $1,000 July 10, 1899, and ninety per centum
of the amount of work done on the 10th day of each suc-
ceeding month during the progress of the work, to be de-
termined by the certificates of the architect to the effect
that such payments had become due, and the balance when
the work should be completed and accepted; the value of any
alterations made in the work on the order of the architects
to be added to, or deducted from, the contract price; if the
contractor fail to prosecute the work to completion, and the
fact being certified by the architect, the district to have the
right, after three days' notice, to proceed with the work, and
complete the same, and deduct the cost thereof from any
money then due, or thereafter to become due under the con-
tract, and to that end the district to be at liberty to take
possession of all material, appliances, etc., on the ground,
and provide such other as may be necessary; the expense

thus incurred to be audited and certified by the architect, and his certificate to be conclusive upon the parties.

The plaintiff, Green Bay Lumber Company, furnished lumber and other materials to Weaver for use in the building, and this action is brought to recover an unpaid balance on such account. The allegation is made by said plaintiff that in March, 1900, and within thirty days after it had furnished the last item of material, an itemized statement of its account, duly verified, was filed with the secretary of the defendant district, making claim for the amount due, and seeking to charge such amount as a lien on the building funds in the hands of the district. The Farmers' Lumber Company, St. John & Barquist, and George Smith are made defendants, and each appeared and filed a cross-petition setting up a claim for materials furnished to Weaver, the allegations in respect thereto being substantially those found in the petition of plaintiff. The defendant Weaver appeared and answered the petition of plaintiff, and the cross-petition of the Farmers' Lumber Company, by general denials. The defendant school district, in its answer, demanded proof of the respective claims made in the petition and the several cross-petitions; alleged that, before completion, the defendant Weaver abandoned the work of construction, and that, as provided for in the contract, the same was thereafter taken possession of and completed by the district at an expense greatly in excess of the balance of the contract price remaining unpaid.

It appears without controversy that during the construction of the building, changes were made in the work so that Weaver became entitled to have added to the contract price the sum of $515.25. It also appears that up to the time Weaver abandoned the work there had been paid to him the gross sum of $13,500. The cost of completion of the building, as claimed by the defendant district, was the sum of $5,592. Other facts as far as material to be considered will be stated in the opinion. There was trial to

the court, and decree in favor of the school district dismissing the petition of plaintiff and the several cross-petitions, with costs.    Plaintiff and the defendants Farmers' Lumber Company and St. John & Barquist appeal, all parties to the action in the court below being made parties.— *Affirmed in part — reversed in part.*

*C. C. & C. L. Nourse,* for appellant Green Bay Lumber Company.

*Shaw, Sims & Kuehnle,* for appellant Farmers' Lumber Company.

*W. A. Helsell,* for appellee Independent School District. .

BISHOP, J.— It will be observed that by adding the amount paid to complete the building, as claimed by the district, to the total sum paid to Weaver, we have an amount considerably in excess of the contract price with extras added.    To avoid the conclusion that ordinarily would be drawn from this situation, appellants present two general matters of contention:  (1) That in the larger part the sums paid to Weaver were unauthorized and improper; (2) the cost of completing the building is not made to appear by any competent evidence.    In addition to the questions thus raised, it is insisted that in any event appellants are entitled to recover the value of all unworked materials furnished by them to Weaver, and which were on the ground at the time the work was abandoned by him, and the same having been thereafter used by the district in completing the building. Complaint is made also that the court refused to enter judgment in favor of the plaintiff and the other subcontractors against the defendant Weaver.    We may notice these several matters of contention in the order of their statement.

I.    The payments made to Weaver were at the times and

in the amounts as follows:   July 13, 1899, $1,000; August
22, 1899, $2,000; September 22, 1899, $3,000; November
10, 1899, $3,000; December 12, 1899, $3,500; and January
9, 1900, $1,000.   It is said that the payments thus made
were improper and unauthorized for two reasons: First,
that the same and all thereof were made upon certificates
signed and delivered by the architect without personal knowl-
edge as to the truth of the facts therein stated; and, further,
that the several amounts for which the same were given were
not in fact due and payable at the time of issue, within the
terms of the building contract.   Second, that at the time of
making such payments the defendant district had full knowl-
edge that the materials now sued for were being furnished
by the parties appellant for said building, and had not been
paid for.   In view of such conditions it is the argument of
counsel, as we understand it, that the parties appellant hav-
ing the right to rely upon the contract being performed
according to its terms the amount of the overpayments to
Weaver must be regarded as moneys in the hands of the dis-
trict, and subject to the payment of their demands.   Fur-
ther, that it was their right after the district had notice of
their relation to the work as materialmen to have all moneys
withheld from payment to Weaver, or sufficient thereof to
satisfy their claims.

In support of their contention, appellants invoke and
rely upon section 3102 of the Code.   In substance, the pro-
visions thereof are that subcontractors who shall furnish
materials for the construction of any public building not
belonging to the State shall have a claim against the public
corporation in question for the value of such materials, not
in excess of the contract price to be paid for such building,
but such corporation shall not be required to pay any such
claim before, or in any different manner from that provided
in the principal contract.   Such claim shall be made by
filing an itemized verified statement with the officer of the
corporation, through whom payment is to be made, within

thirty days after the last of the material is furnished. As we have seen, each of the materialmen in the instant case made and filed such statements. Some question is made as to the sufficiency thereof in respect of form, and as to the filing thereof, but we think there was a substantial compliance with the statute respecting such matters. It is material to be noticed that each of such statements were filed subsequent to the last payment made to Weaver.

Now as to the architect's certificates, it appears clearly enough that each of the same was signed by the architect in charge, and was to the effect that the payments as stated therein respectively, had been earned and were due. Granting for the moment that the question involved is a proper one to be raised by appellants in view of the record, we do not think their contention can be sustained. It may be conceded that the architect did not in person go over the work and make estimates basing the same upon facts wholly within his own knowledge, still, as we read the contract, there was no requirement that this should be done. The architect was not employed to superintend the work, and it cannot be said that it was within the contemplation of the parties to the contract that he should have knowledge of the work in detail as it progressed. It was provided in the contract that a superintendent of the work should be employed by the district, having authority to judge of the materials furnished and work done, and one was in fact employed. From time to time such superintendent, together with Weaver, went over the work and agreed upon a statement of the amount of materials furnished and labor performed, and these statements were laid before the architect. We think it fair to say that the latter went over the statements with the superintendent, and based thereon, and upon other reports made to him, and the general knowledge derived by him from an occasional visit to and inspection of the work, he issued the certificates. The contract goes no farther than to provide that payment shall

1. PUBLIC BUILD-ING CONTRACT: payments; architect's certificates.

be made only upon the certificates of the architect. In a sense, he was agreed upon as the representative of both parties to determine when payments were to become due, and the amount thereof, and, as we think, he was left free to advise himself as best he might of the essential facts upon which he was to act. It is not pretended that any fraud entered into the making of the certificates, nor is it claimed that the district had any knowledge that the payments, as made in accordance with such certificates, had not been earned in fact. Conceding, therefore, that the accuracy of the payments, taken in strict comparison with the work finished as stipulated in the contract, might otherwise be fairly the subject of debate, still we think the district had the right to rely upon the provisions of the contract made for its benefit, and act in accordance therewith. Our conclusion finds support in the following authorities: *Howard v. Baker,* 119 Mo. Sup. 397 (24 S. W. Rep. 200); *Williams v. Railway,* 112 Mo. 463 (20 S. W. Rep. 631, 34 Am. St. Rep. 403); *Railway v. March,* 114 U. S. Rep. 549 (5 Sup. Ct. 1035, 29 L. Ed. 255); *McNamara v. Harrison,* 81 Iowa, 486; *Ross v. McArthur,* 85 Iowa, 203.

We may now inquire whether there was any duty on the part of the school district to withold payments in view of the fact that within its knowledge the materials sued for were being furnished. Rights in favor of mechanics and materialmen, as here to be considered, exist only by virtue of the statute. The statute does not authorize creation or filing of such liens as against public buildings. While section 3102 of the Code appears in the general chapter devoted to mechanics' liens, yet we have expressly decided that it cannot be construed either to authorize a lien upon a public building or to create a lien in favor of a laborer or materialman upon funds due the principal contractor erecting such building. *Whitehouse v. Surety Co.,* 117 Iowa, 328. Now, the district had undoubted right to make such contract as it pleased, and it had the right to

2. SUBCONTRACTOR'S liens.

perform such contract according to the terms thereof. The statute does not attempt to abridge or limit such right. A public corporation can be made liable in no other way than by the filing of a claim with its proper officer, and then only to the extent that payments as provided for in its contract remain unpaid. *Epeneter v. Montgomery Co.,* 98 Iowa, 159. There being no provision for a lien, it is not conceivable upon what theory any duty or obligation on the part of the corporation to protect the interests of the subcontractors can be said to exist. Up to the time a claim is filed we think there is none. The doctrine of the cases arising under the provisions of the law giving a lien to mechanics and materialmen can have no application. Such are the cases of *Chicago, etc., Co. v. Woodside,* 71 Iowa, 359; *Simonson v. Bank,* 105 Iowa, 265; *Stone Co. v. Crissman,* 112 Iowa, 122. A vital element in the rule of the cases thus cited, and like cases, and wholly wanting here, is the existence of a lien covering the entire period during which work is being done or materials are being furnished.

II. It is conceded that the work of building was left uncompleted by Weaver. So, too, no question is made but that, under the contract and the law, the school district had 3. BUILDING CONTRACT: abandonment; completion; certificate of cost. the right to take up the work and carry it on to completion and pay the expense thereof out of the contract price. *Epeneter v. Montgomery Co., supra; Beach v. Wakefield,* 107 Iowa, 592. Appellants do not pretend that the amount as claimed to have been expended by the district in completing the building was not so expended, or that any sum was unwisely or improperly expended. The contention is that proof of the amount of the expenditure is lacking. A provision of the contract is as follows: " The expense incurred * * * for furnishing materials or finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate shall be conclusive upon the parties." The defendant district produced upon the trial, and

put in evidence a certificate of the architect to the effect that he had audited the expense of completing the building, and that the amount thereof was the amount as claimed by the district in its answer.   Such certificate was the proof required by the contract to be made, in the event of the possible condition of affairs arising.   It became binding upon the parties, and a third person could not be heard to contend for any higher rights.   In principle, the cases cited in the foregoing subdivision of this opinion, relative to certificates of work done, are applicable here.   Of course, the certificate thus made might be impeached for fraud or mistake, but even in such cases nothing could avail the attacking party but proof that the cost was in fact less than the amount named in the certificate.   No such course was attempted in this case.

III.   Appellants point out that the evidence shows that at the time Weaver abandoned his work there was on the ground a considerable quantity of unworked material which 4. LIABILITY FOR had been purchased from them.   It is said UNUSED MATERIAL. that this was made use of by the district in its work of completing the building, and that for the value thereof it should be held to a personal liability.   We do not see how, under the circumstances, this can be true.   To begin with, this is not an action for conversion.   It is an action to enforce a claim against a specific fund, supposed to be in the hands of the district.   But, aside from this, the fact remains that the appellants sold and delivered the materials in question to Weaver.   They did this knowing that one of the provisions of the contract was that, in the event he abandoned the work, the district had the right to take possession thereof, inclusive " of all materials, tools, and appliances thereon," and to finish the work.   Counsel do not cite any authority for holding that, under such circumstances, the district can be required, at whatever cost of time and trouble, to sort out and separate the pieces of material which had been paid for by Weaver from those not so paid for, and

that for the latter a personal liability would follow its use. We know of no such authority.

IV. The record shows that the action was commenced for judgment against Weaver, as well as to establish and have enforced a claim against the defendant district. The 5. MECHANIC'S cross-petition of the Farmers' Lumber Com-LIENS: judgments. pany also demands judgment against Weaver. The record further shows that Weaver appeared to the action and filed answer to the petition of plaintiff and the cross-petition of the Farmers' Lumber Company. The proof was ample to support a judgment in each instance, as demanded. We can perceive no reason why judgment should not have been entered accordingly.

We conclude that the decree was right, and it is affirmed in all respects, save in the matter of the judgment demanded against the defendant Weaver in favor of plaintiff and the cross-petitioner Farmers' Lumber Company, and in that respect it is reversed, and the case is ordered remanded for judgment as prayed.— *Affirmed* in part. *Reversed* in part.