POWERS DRY GOODS CO. *vs.* IMPERIAL FIRE INS. CO. OF LONDON.

Argued Nov. 25, 1891.     Decided Feb. 8, 1892.

**Fire Insurance Policy—Covenant to Furnish Inventory.**—The obligation imposed upon the assured, by the terms of a policy of fire insurance, to make a particular inventory of the goods after a fire shall have occurred, is excused if the goods are so damaged that it is not reasonably practicable to make such an inventory. Evidence *held* to justify the verdict.

—— **Arbitration as to Amount of the Loss.**—A policy contained an arbitration clause giving either party the right to demand this mode of adjustment in the event of a disagreement between them as to the amount of the loss. Each party was to select one arbitrator, and the two so chosen were to select an umpire. *Held*, that if, upon a demand by the assured for such an arbitration, the insurer in bad faith prevents or unreasonably postpones an arbitration, the latter is precluded from pleading, in defense of an action, that there had been no arbitration.

—— **Same—Compromise Pending, No Excuse for Delay.**—The pendency of negotiations for a compromise does not excuse a party from compliance with a demand that arbitration proceedings go forward.

**Interference in the Choice of an Umpire.**—One of the parties to such an agreement for an arbitration should not assert his will, preference, or disapproval to control the arbitrators in the choice of an umpire; and if, by so doing, he prevents a choice being made, the failure of the arbitration being due to his own misconduct, he cannot of right demand that proceedings for an arbitration be undertaken *de novo.* The other party may resort to the ordinary legal remedy by action.

**Evidence—Sayings of Others Acquiesced in.**—The defendant's adjusting agent being shown to have acted with the agents of several other companies in personal negotiations and transactions for the adjustment of the loss, it was properly for the jury to consider (upon the evidence) whether what was said by such other agents in the presence of the defendant's adjuster was not concurred in by him, in the absence of any dissent on his part.

Appeal by defendant Imperial Fire Insurance Company of London from an order of the district court of Ramsey county, *Cornish,* J., made June 22, 1891, refusing a new trial.

Plaintiff, Powers Dry Goods Company, was on November 27, 1890,

at St. Paul, Minn., a business corporation dealing in dry goods at wholesale, and had on that day in its building, on Fourth street, merchandise of the value of $345,275.45. It had insurance against fire on this stock to the amount of $387,000, distributed among a great number of insurance companies. The defendant was one of these, and had insured plaintiff $5,000 for one year by a policy corresponding in form to the Minnesota standard policy prepared by the insurance commissioner, under Laws 1889, ch. 217. By the terms of the policy, $500,000 concurrent insurance was permitted.

A fire occurred November 27, 1890, by which the insured property was damaged to the extent of $152,861. Notice was immediately given the defendant and the other companies. Their adjusters arrived on November 29th after the fire, but were unable to agree with plaintiff as to the amount of the loss. On December 5, 1890, plaintiff demanded in writing that the amount of loss be ascertained by appraisers in accordance with the provisions of the policy, and stated it was ready to proceed forthwith, and to name an appraiser, and it demanded that defendant should act promptly. On December 12, 1890, defendant consented to such appraisal. Each party named an arbitrator. Plaintiff named C. H. Kellogg, of St. Paul, and defendant named P. A. Larson, of Lake Crystal, but he did not arrive in St. Paul until December 16th, when the two met to select an umpire. Defendant did not leave the choice of an umpire to said appraisers, but gave its appraiser instructions to insist on either Reuben Warner or P. T. Kavanaugh, whose names it furnished him, and to refuse all others. Plaintiff's appraiser proposed 11 different competent men, successively, but each was rejected by defendant's appraiser. Thereupon Mr. Kellogg accepted Mr. Warner, one of the two proposed by defendant's appraiser, and he was notified, but he promptly declined to serve. Defendant then gave positive instruction to Mr. Larson, its appraiser, to insist on Mr. Kavanaugh for umpire, and to agree to no one else. On the next day Mr. Larson resigned, and left the city. On December 18th defendant appointed Mr. Kavanaugh its appraiser in Larson's place, and notified plaintiff, but it refused to arbitrate, on the ground that it could no longer delay its business or suspend sales, as its expenses

were about $5,000 per month, its business suspended, the stock depreciating, its customers going elsewhere, and it believed defendant to be acting in bad faith to compel it by delay to accept a compromise.

As soon as practicable after the fire, plaintiff made an inventory of its stock of goods, except those on the third floor of one of the stores. Those were in part consumed in the fire, and the residue were so badly injured and disfigured that no proper inventory of them could be made. This inventory consisted of about 400 pages of typewriting, and was at the disposal, and for the inspection, of all the insurance companies interested. On December 23d the defendant, and other companies acting in concert with it, demanded that plaintiff furnish them a complete inventory of the stock. Plaintiff thereupon made and furnished copies of this inventory, stating that the goods on said third floor were so completely destroyed that it was impossible to make an inventory of them, but that its books showed their aggregate cost to be $56,529.39, exclusive of freights; that this amount was arrived at by taking the inventory made in July previous, and adding the cost of goods put in, and deducting the amount sold out.

This action was commenced March 2, 1891, to recover of defendant its proportion of the loss. It was tried May 18, 1891, before Judge *Cornish* and a jury, who returned a verdict for plaintiff for $2,009.51, the full amount claimed, with interest. Defendant moved the court, on a settled case, for a new trial, but was refused, and it appealed.

*Young & Lightner,* for appellant.

This policy is not the work of the insurer. It is the Minnesota standard policy, a form prepared by the state insurance commissioner, and its use is imposed on all insurance companies by highly penal provisions of the statute. Laws 1889, ch. 217. The old rule by which insurance contracts are construed against the insurer, because prepared by it, is thus abrogated. The defendant resists a recovery on two grounds: (1) That no inventory was ever made as required by the policy; (2) that no appraisal was had as required by the policy, though an appraisal was requested by defendant.

The plaintiff, to excuse its default, claims that defendant lost its right to insist on an appraisal because defendant fraudulently, and for the purpose of oppressing plaintiff and causing it additional loss, delayed proceedings for an appraisal between December 5 and 16, 1890.   Defendant denies this, and claims the court erred in instructing the jury that there was evidence on which they could find bad faith and willful delay on defendant's part prior to December 16th; and in instructing the jury that, if they should so find, defendant could not defend on the ground of want of an appraisal, even though on and after the 16th its conduct was wholly without fault.

That an appraisal, if requested, is a condition precedent to defendant's liability, is entirely clear. The policy in terms says so, and similar provisions in other policies are construed to be conditions precedent to liability or to suit, according to the language used. *Gasser* v. *Sun Fire Office*, 42 Minn. 315; *Hamilton* v. *Liverpool, London & Globe Ins. Co.*, 136 U. S. 242; *Altman* v. *Altman*, 5 Daly, 438; *Davenport* v. *Long Island Ins. Co.*, 10 Daly, 535; *Uhrig* v. *Williamsburgh City Fire Ins. Co.*, 101 N. Y. 362.

The evidence is insufficient to justify a finding that the defendant improperly interfered with Larson's free choice of umpire, or was in any wise to blame for the failure of the appraisers to choose an umpire, or for Larson's resignation.

The making of an inventory was a condition precedent to defendant's liability and to the bringing of this action.   It was not merely a condition precedent to bringing suit, but was a condition precedent to any liability on defendant's part.   The requirement of an inventory was never waived, or attempted to be waived, by defendant.

It is a well-settled rule of law that, if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party.   Unforeseen difficulties, however great, will not excuse him.   *Dermott* v. *Jones*, 2 Wall. 1.

*Lusk, Bunn & Hadley*, for respondent.

Counsel for the appellant, in their statement of facts and elsewhere, assume that the policy is to be construed more favorably than

otherwise to the insurer, because it was prepared under the provisions of Laws 1889, ch. 217. This claim is without merit. *Reed v. Washington Fire & Marine Ins. Co.*, 138 Mass. 572.

After the policy has taken effect, and a loss has arisen, provisions to forfeit the claim for loss are not favored, and are construed and applied strongly against the insurer, so as to save forfeiture. *Chandler v. St. Paul Fire & Marine Ins. Co.*, 21 Minn. 88; *Hinman v. Hartford Fire Ins. Co.*, 36 Wis. 164.

Under the contract, appraisal is not essential before action can be brought. But, if it is essential, plaintiff cannot be compelled to enter a second appraisal after one has proven abortive without its fault. If appraisal is essential, and if plaintiff can be compelled to enter a second one, the jury were warranted in finding on the evidence that defendant had lost the right to have a further appraisal by bad faith in the conduct of the adjustment, and in interfering with the appraisers and rendering the first arbitration abortive.

It is at least doubtful if the policy makes arbitration a vital part of the contract to pay the loss. This policy contains, first, an agreement to pay the actual loss by fire, (not exceeding the sum insured,) and then an agreement to refer. It is not a contract to pay such a sum as arbitrators may award, as in *Scott v. Avery*, 5 H. L. Cas. 811. Neither does the policy say that award is a condition precedent, as in *Hamilton v. Liverpool, London & Globe Ins. Co.*, 136 U. S. 242. Nor does it say in terms that no action shall be sustainable until an award is had, as in *Gasser v. Sun Fire Office*, 42 Minn. 315, and *Wolff v. Liverpool & London & Globe Ins. Co.*, 50 N. J. Law, 455. *Elliott v. Royal Exch. Assur. Co.*, L. R. 2 Exch. 237; *Dawson v. Fitzgerald*, 1 Exch. Div. 257; *Hamilton v. Home Ins. Co.*, 137 U. S. 385; *Badenfeld v. Mass. Mut. Acc. Ass'n*, 154 Mass. 77.

One who alleges that a collateral covenant ousts the jurisdiction of the courts to enforce the main covenant should be held to point out plain and clear language which compels this conclusion. *Wallace v. German-American Ins. Co.*, 4 McCrary, 124; *Phippen v. Stickney*, 3 Met. (Mass.) 384.

If the contract is to receive a reasonable construction, it cannot be that the assured is bound to enter and re-enter into fruitless ar-

bitrations, indefinitely. If bound to enter into the second, he is into the third, and so on. Where is a line to be drawn? No line can logically be drawn anywhere if the assured is bound to enter the second arbitration. The reasonable rule is that by one submission in good faith the assured has done all his covenant requires, and may then resort to the courts. *Cavanagh* v. *Dooley*, 6 Allen, 66.

Adjustment, or a fair effort to obtain it, is all that the assured is bound to. *Adams* v. *South British & Nat. Fire & Marine Ins. Cos.*, 70 Cal. 198; *Old Saucelito Land & Dry Dock Co.* v. *Commercial Union Assur. Co.*, 66 Cal. 253. One appraisal, honestly entered into, is a fair effort. At least, if not so *per se,* a jury is warranted in saying it is so, as a matter of fact.

As to interference with the appraisers in their choice of umpire, the policy says that the appraisers shall choose an umpire. It is clear that the choice is thereby taken out of the hands of the parties. They may, like outsiders, give advice to the appraisers; but if either imposes his will on his appraiser, so that the appraiser speaks the voice, not of himself, but of the party he represents, this is a clear breach of the contract, and is evidence from which the jury may infer bad faith. *Uhrig* v. *Williamsburgh City Fire Ins. Co.*, 101 N. Y. 362; *Bishop* v. *Agricultural Ins. Co.*, 56 Hun, 642; *Continental Ins. Co.* v. *Wilson*, 45 Kan. 250.

An inventory such as the policy requires is not a mere list of articles. It must be that, and also a showing of the quantity and cost of each article, and the amount claimed thereon. The question is whether an inventory complying with the policy could have been made. The plaintiffs did make, at great trouble and expense, an inventory of their whole stock, except the part in the third story. This consisted of 410 pages of matter, and no objection is made to it, except as to the omission of goods in this one room. To inventory this was impossible. The duty of the plaintiff was to make such an inventory as the policy called for, such an inventory as the plaintiffs could make, using all reasonable care, effort, and diligence in that regard. Fire is not the act of God, or the law, or the other party; yet as the contract is made with direct reference to fire, and as the parties must have known that fire frequently renders an inv-

ventory impossible, they must be held to contract with reference to that fact. The contract must be given a reasonable construction. Substantial performance of all that was reasonably practicable and possible is sufficient. *Bumpstead* v. *Dividend Mut. Ins. Co.,* 12 N. Y. 81; *Eggleston* v. *Council Bluffs Ins. Co.,* 65 Iowa, 308; *Goldsmith* v. *Gore District Mut. Fire Ins. Co.,* 27 U. C. C. P. 435; May, Ins. §§ 474, 475. The evidence is sufficient to enable a jury to say that it was absolutely impossible to make the inventory required by the policy.

DICKINSON, J. The property for the loss of which a recovery is sought on the defendant's policy of insurance consisted of a wholesale stock of dry goods, contained in two contiguous buildings in the city of St. Paul, one of which is distinguished as the "three-story building." Two grounds of defense are to be considered. The first is that, as to the goods contained on the third floor of the three-story building, the plaintiff did not comply with the express terms of the policy, which required the insured, in case of loss, to "make a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon." The second ground of defense is that the plaintiff did not comply with another provision of the policy, to the effect that, in case of disagreement of the parties as to the amount of the loss, the same should be ascertained by appraisers, one of whom should be selected by each of the contracting parties. The two appraisers so selected were to choose an umpire. In fact no such particular inventory as is specified in the policy was made of the goods on the third floor of the three-story building; but the plaintiff's position in the case is that it complied with this requirement of the policy as far as could be done, and that the extent and nature of the damage done by the fire in this apartment was such that an inventory of the goods could not be made. The court submitted it to the jury to determine whether the fact was in accordance with the contention of the plaintiff, instructing the jury, in effect, that the failure to make such an inventory would not preclude a recovery if, by the exercise of all reasonable effort and diligence, the plaintiff could not have complied with the express requirement of the policy. This instruction was not excepted to, and may be ac-

cepted without comment as the law of the case.    The evidence upon this point was such that the issue was properly submitted to the jury. Not only was there direct evidence in support of the verdict, but there was evidence going to show that, after the defendant had demanded that a complete inventory be made in accordance with the requirement of the policy, it received without objection an inventory which declared on its face that it did not include the goods on the third floor of the three-story building, and stated the impossibility of making an inventory of such goods as the reason for the omission.    The defendant's agent, who acted in its behalf, was then personally acquainted with the condition of the goods, and the failure to object to the omission from the inventory might be considered by the jury as an assent to or admission of the fact stated in the inventory,—that those goods were damaged to such an extent that it was impossible to make an inventory of them.

In considering the second ground of defense above referred to, we shall assume, in accordance with the ruling at the trial, that the plaintiff would have no right to maintain this action if it had refused or neglected to comply with the provisions of the policy with respect to an appraisal or arbitration.    In fact there was no such appraisal, but it is claimed on the part of the plaintiff that this was not by reason of its fault or neglect, but is to be attributed to the misconduct and bad faith of the defendant, and that the latter is hence precluded from putting forward as a defense the fact that there was no appraisal.    There was evidence reasonably supporting this position of the plaintiff, and from which the jury might conclude that, after there came to be a disagreement as to the amount of the loss, and after the plaintiff demanded that an appraisal be speedily made, the defendant unreasonably delayed such action on its part as was necessary to that end, for the purpose of postponing an adjustment, and subjecting the plaintiff to such embarrassment and loss from the interruption of its business during the process of adjustment as to prompt it to a settlement of its claim upon terms which would not otherwise be accepted.    And, further, there was evidence reasonably tending to show that after each of the parties had selected an appraiser, and after such appraisers had met to choose an umpire, the

defendant unduly influenced the conduct of the person whom it had selected in respect to the choosing of an umpire, and so opposed the free exercise of his judgment and discretion that he refused to accept for that position persons whom both the arbitrators deemed acceptable and fit to be chosen, and with the result that no umpire was agreed upon by them, and the arbitrator selected by the defendant declined to act further in the matter.   The finding of the jury upon these matters cannot be set aside for want of evidence to support it. If the defendant did exercise such bad faith and misconduct in respect to proceedings for an appraisal by arbitrators, its defense that the plaintiff refused to enter upon another attempt to secure an appraisal cannot be allowed.  One of the reasons for the insertion of provisions of this kind in policies of insurance is to provide a means for the speedy settlement and adjustment of the loss; and, as such a provision can only be carried into effect by the concurrent action of both parties, neither can rightfully refuse to act with reasonable promptness, when the other demands that such action be taken. Neither can rightfully postpone his concurrent action for the purpose of forcing the other to a settlement.   If one in bad faith prevents or postpones unreasonably the carrying into effect of this stipulated method of adjusting the rights of the parties, by refusing to participate where his participation is necessary, he ought not to be heard to plead, in defense of an action to recover upon the contract, that the stipulated mode of adjustment has not been pursued.   *Uhrig* v. *Williamsburgh Fire Ins. Co.*, 101 N. Y. 362, (4 N. E. Rep. 745.)

· The plaintiff had made an offer to compromise its claim, and to accept a specified sum if the offer should be accepted within a specified time; but the evidence tended to show that during that time, and while the proposal was still pending, it also urged the defendant to action in the matter of the arbitration, which, as it seems, might be expected to require for its completion a longer time than had been allowed for the acceptance of the offer to compromise.   The pendency of negotiations for a compromise did not excuse the defendant from compliance with the plaintiff's demand, previously made, but still insisted upon, that the arbitration proceedings go forward.   The plaintiff had the right to require the observance of the contract provision for

an arbitration, and it could annex to its offer of compromise, either when it was made, or, subsequently, before its acceptance, the condition that the arbitration proceedings should not be thereby delayed. The offer to compromise and the demand for an arbitration were not inconsistent. It may be conceded that defendant might state to the arbitrator whom it had appointed any specific *fact* showing the unfitness of any person whose selection as an umpire might be contemplated; for instance, that such person was a member of the plaintiff corporation. But it had no right to assert its mere will, preference, or disapproval, to control the *choice*, in which, by the terms and spirit of the contract, neither of the parties was to have a voice. The agreement contemplated that the two arbitrators alone should select the umpire in the exercise of *their* judgment and discretion, uncontrolled by the interested parties. It was of the very essence of the agreement that the latter should *not* choose or reject, or assert their preference or objections. If the defendant, by expressing to the arbitrator whom it had chosen its disapproval of the selection of particular persons,—as, by saying that such persons would not act impartially,—led him to defer to its will, or so influenced him that by reason of such interference he did not agree with his fellow arbitrator in the selection of an umpire when otherwise he would have done so, the failure of the proposed arbitration is attributable to the fault of the defendant, and the plaintiff had the right to pursue its legal remedy by action. That would be such a violation of the agreement in its spirit as would absolve the other party from the obligation either to go on with the arbitration proceedings commenced or to enter anew upon other like proceedings. *Uhrig* v. *Williamsburgh Fire Ins. Co., supra.* The fact that the plaintiff took part in arbitration proceedings subsequent to any acts of bad faith on the part of the defendant did not constitute a waiver unless the plaintiff had knowledge of such acts.

What has been already said is in part applicable to errors assigned in respect to qualifications of several instructions requested by the defendant. These requested instructions, which were quite voluminous, were to the effect that the plaintiff could not maintain the action if certain specified conditions should be found by the jury, among

which was the pendency of negotiations for a settlement subsequent to the making of a demand by the plaintiff for an appraisal. The court, in giving these instructions, added to the condition or premise above referred to the proviso that the defendant was acting in good faith in respect to such negotiations for a settlement. We think that there was no error in this, and that the nature of the issue justified the action of the court in that regard. The adjusting agents of many other insurance companies, which had insured the same property, were present to adjust the loss. Many of them agreed upon the appointment of a committee, consisting of several of such. adjusters, to act in their common interest. Brown, the defendant's adjuster, did not consent to commit the interests of his company to the committee, but indicated that he would co-operate with the committee; and, as the evidence goes to show, he did act with them to a considerable extent in the subsequent negotiations and transactions with the plaintiff. Several assignments of error relate to the admitting of evidence of the declarations or conduct of the members of this committee when, as there was evidence to show, Brown was present. The rulings of the court were not erroneous. While the committee may not have represented the defendant, yet the relations of the agent of the latter with the committee were such, his action so far in concert with theirs, that, in view of the fact that all were acting with respect to the same subject and to the same end,—the adjustment of the loss, —it was properly for the jury to consider whether what was said and done by the members of the committee in his presence was not to be deemed to have been concurred in by him, in the absence of any expression of dissent. Without referring specifically to some other assignments of error, relating to the admissibility of evidence, we will only say that we find in them no substantial error.

Order affirmed.

(Opinion published 51 N. W. Rep. 123.)