LINA CHRISTIANSON v. NORWICH UNION FIRE INSURANCE
SOCIETY.[1]

December 6, 1901.

Nos. 12,796—(87).

Fire Insurance—Arbitration.

For the arbitration of disagreements between the insurer and insured
as to the loss and damage sustained at a fire the Minnesota standard
policy contemplates and provides for a board of referees, to be made
up of disinterested and impartial men chosen for their ability and fair-
ness.

Board of Referees.

Such board of referees is a quasi court, governed by the rules appli-
cable to common-law arbitration.

Method of Inquiry.

While allowed reasonable freedom personally to inspect the ruins of a
fire, the debris and remnants of damaged goods, for the purpose of
applying their knowledge in considering evidence, the inquiry must be
conducted by the board in the usual manner of receiving evidence and
examining witnesses in the presence of the interested parties or their
counsel, subject to the tests of cross-examination.

Acts Invalidating Award.

Where two of the referees proceed to act together, privately collecting
information and examining witnesses without regard to the third referee,
finally making up the award without reference to him, and where
evidence is received by the full board without affording the parties con-
cerned an opportunity to be present in person or by counsel, such con-
duct will invalidate the award.

Misconduct of Professional Referee.

A party does not assume the consequences of irregularities and mis-
conduct on the part of a referee merely because it was known to him
that he was a professional referee on behalf of the interests of the
opposite party.

Refusal to Accept Award—Practice.

When one of the parties to such a controversy refuses to abide by an
award on the ground of misconduct of referees, and notifies the other

[1] Reported in 88 N. W. 16.

party of that fact, stating the grounds of objection, and demanding a reappraisement, the party so notified has the option to stand by the award or submit to a reappraisement; and if he shall elect to abide by the award, and the same is adjudged illegal for the cause assigned, then there can be no resubmission to other referees, but the damages may be determined in the action brought to set aside the award.

## Evidence.

Evidence considered and *held* to sustain the findings of the court in reference to the amount of damage and the misconduct of the referees.

Action in the district court for Hennepin county to set aside an award made by referees and to recover $3,000 and interest upon a policy of fire insurance. The case was tried before Pond, J., who found in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Brown & Kerr* and *Wm. A. Lancaster,* for appellant.

*H. J. Gjertsen, M. H. Boutelle* and *Robert Jamison,* for respondent.

LEWIS, J.

This action is brought by plaintiff to set aside the award of referees, appointed to determine the amount of loss under a fire insurance policy in the defendant company, upon the grounds of fraud and misconduct in their methods of procedure and of the inadequacy of the award.

The trial court returned findings to the effect that the reasonable and fair cash value of the stock of goods and merchandise in plaintiff's possession at the time of the fire was $29,348.71; that the material entirely destroyed amounted to $13,777.08, and that the direct loss and damage to the residue of her goods was $13,021.40, causing plaintiff a total loss and damage of $26,798.48; that immediately after the fire plaintiff served defendant with due notice thereof, in accordance with the required terms of the policy, and upon failure of agreement by the parties as to the amount of the loss the matter was referred to three appraisers, appointed in the manner provided in the policy by each party submitting to the other a list of three names, from which plaintiff selected W. W. Thomas and defendant Harry A. Titcomb, and the

two referees so chosen agreed upon William A. Alden as the third referee,—all of Minneapolis; that the referees proceeded to consider and estimate the loss and damage to plaintiff's stock of goods, and from April 30 to May 22, 1900, held various meetings for the purpose of hearing the testimony of witnesses offered by the respective parties, also examining plaintiff's books of account, invoices, vouchers, and other papers, and viewing the premises and the goods partially destroyed by the fire, thereafter determining the sound value of the goods and merchandise on hand at the time of the fire to be $29,348.71, after which no evidence of any character was received or considered by them as a board, but that Referees Thomas and Alden, acting by themselves, later reconsidered the question, reducing the amount to $14,302.45, which award, so signed by them, defendant accepted, and has declared itself ready and willing to pay, but which offer plaintiff declined, and on May 24, 1900, formally rejected it by written notice to defendant charging unfairness and misconduct on the part of the referees, and demanding a reappraisement and resubmission of the matter to other referees; that defendant refused its consent to such resubmission, and has at all times insisted upon the validity of the award made by Thomas and Alden, and expressed its willingness and ability to pay that amount.

The court found that Referees Thomas and Alden were not fair, disinterested, and impartial persons, but, on the contrary, were so strongly biased and prejudiced against plaintiff as materially to affect their actions in making up and signing the award; that on different occasions during the progress of their proceedings Referee Thomas had openly declared himself the representative of the insurance company's interests; that Thomas and Alden had privately consulted witnesses concerning the quality and value of plaintiff's stock of goods, thereby materially influencing their action and decision; that they agreed to hear further evidence on plaintiff's behalf, and to notify her of a time and place for that purpose, but found their award without so doing. The court further found that within four months prior to the selection of Referee Thomas he had served in like capacity

for other insurance companies, which plaintiff well knew at the time of his selection, and that for a period of seven years preceding he had engaged in numerous appraisements of fire losses as the representative of insurance companies, and was known in their circles as a professional referee on their behalf; that Referee Titcomb, at the time of his selection, and for several years prior thereto, had been actively engaged as an adjuster of fire losses for the assured, and that previous to his selection by defendant he had been in plaintiff's employ preparing proofs of her loss at this fire, which facts were at that time all known to defendant; that Referee Thomas was employed not to exceed seventeen days in this appraisement, and that the defendant and the other insurance companies paid him the sum of $1,015 for his services as such referee.

As a conclusion of law, judgment was ordered that the award submitted by Referees Thomas and Alden be declared void and vacated; that defendant, by reason of its action and conduct since the making and rendition of the award, had waived its right to a resubmission of the matter to other referees; and that plaintiff recover from defendant the full amount of the stated loss, with interest. The assignments of error present two questions: First. Does the evidence justify the finding of the court as to the amount of goods on hand at the time of the fire, the amount of plaintiff's loss, and the misconduct and prejudice of the referees? Second. As a matter of law, had the defendant waived its rights to a resubmission of the question of loss and damage to other referees?

After an examination of the voluminous record, we are satisfied that the findings of fact are supported by the evidence, and will not enter into a lengthy discussion of that question. As to the cash valuation of the goods on hand at the time of the fire, it is sufficient to say that the court was not limited to any particular method of estimating that value. It was not compelled to take the invoice or cost price alone for a basis, nor the statement made up by any particular expert. Neither was it necessary that the court should find against respondent because her books were incomplete. The court's finding is based upon evidence from all

sources, including the amount of goods usually carried, invoices, and statements of respondent and her bookkeeper and assistants, together with the report of the experts. Tested by the usual methods, the court was justified in its conclusion. Those acts of the referees relied on by respondent as constituting misconduct are detailed in the specific findings of the court, and it is unnecessary to review the evidence in that respect. The record discloses the fact that the proceedings were carried on in substantially the manner stated by the court, and are sufficient to justify the ultimate conclusion of misconduct to such an extent as to invalidate the award.

The board of referees provided for under the standard policy is a quasi court, subject to the principles governing common-law arbitration. Such board should sit in a body, and receive evidence offered by the respective parties, submitting the same to the usual tests of cross-examination. While its individual members are prohibited from privately collecting evidence from different sources, a reasonable latitude is allowed them in the examination of the premises, remnants of goods, and causes of the fire, for the purpose of better understanding and weighing the evidence on the principal question before them, viz., what is the just damage to the property involved? But, while a certain liberality is permissible in acquainting themselves with the circumstances surrounding the fire without the medium of witnesses, such board is not selected for the purpose of seeking evidence secretly, and determining the amount of the loss by reason of such personal knowledge. See authorities cited in 2 Am. & Eng. Enc. 641–655. This court has practically stated the rule in Mosness v. German-American Ins. Co., 50 Minn. 341, 52 N. W. 932. The referees must constitute a body of disinterested men, whose business it is to proceed in a judicial and impartial manner to ascertain the facts in controversy.

By referring to the findings in this case, it will be seen that the referees did not follow the proper method of discovering facts. They should have accorded respondent every reasonable means of presenting her evidence and appearing in person or by counsel, and, if any referee had privately ascertained the existence of

evidence bearing upon the case, it was his duty to take the proper steps to have it produced before the board. The result arrived at must be the conclusion of the board as a whole by their fair and honest consideration of all evidence in the case, and no two of them are privileged to act independently of the third at times and places unknown to him.

It is asserted on behalf of appellant that the referees were selected with full knowledge by each party that both Thomas and Titcomb had similarly served before, and in fact were chosen for the value their experience might afford the respective interests in this case, and that, whatever the misconduct or illegality resorted to by them, it was nothing more than might have been contemplated. While true that these men were experienced in work of this particular kind, it cannot be said that they were chosen with the expectation by the parties of their becoming their respective advocates. There is nothing in either the evidence or findings of the court to indicate that either appellant or respondent desired the referees to go beyond the legitimate limits of the inquiry. Consequently, there is no application here of.the rule sometimes applied that parties are bound by the result when it appears they voluntarily selected referees with the expectation of their accomplishing certain results by unjust means.

The principal question in this case is one of law. Conceding that appellant was in no way connected with the referees' misconduct for which the award was declared invalid, is appellant entitled to a resubmission? Appellant takes the position that it was in no manner responsible for the referees' misconduct, and, the award having been declared invalid, the parties are in the same position they were in before commencement of suit, and that the judgment setting aside the award has the effect of annulling it. We are referred to a certain line of cases in support of this proposition,—cases which have held that, where an attempt has been made, but for some reason arbitration has not taken place, a new arbitration is necessary,—but they are not applicable here.

Respondent refers to the case of Levine v. Lancashire Ins. Co., 66 Minn. 138, 149, 68 N. W. 855, as an authority for the insured to com-

mence action against defendant to recover the amount of the loss when the award has been obtained by misconduct on the part of the referees, irrespective of the insurer's connection with such fraud. In that case the court did not base its decision upon the fact that the defendant company was connected with the fraud of the referees, but held that the insurer was not entitled to a resubmission to another board of arbitration, for the reason that by its conduct it had waived such right by not suggesting a new appraisement, and in expressly insisting upon the award as made, and notifying the insured that any claim under the policy must be upon the basis of that award, and no other. In the answer in that case defendant made no suggestion of a reappraisement, but insisted from first to last upon the validity of the award; whereas in the case before us appellant, in its answer, after denying the allegations of the complaint as to the invalidity of the award, asserted that it was valid and binding, yet alleged that, if such award should be declared invalid, then that the question should be resubmitted. The demand for resubmission was conditioned upon the result of the action, and was of no importance.

In our opinion, the Levine case lays down a sound principle, and one which is controlling in this case, which is to the effect that, if an award is attacked upon the ground of fraud or misconduct of the referees, and one party to the controversy notifies the other of that fact, demanding a reappraisement on account of such misconduct, it then becomes the duty of the other party to investigate the validity of the charges, and determine whether or not it will abide by the award or submit to a reappraisement; and, if it shall determine to abide by the award and refuse to submit to a reappraisement, such party is thereby estopped from thereafter demanding another appraisement, in case the charges shall prove to be sustained. The purpose of the provisions in the standard policy with reference to arbitration is to secure a speedy determination of the controversy, and to hold that the party insisting upon the validity of an award might litigate that question, and not be bound by the result of the action, would be to create an interminable method by which the controversy could be submitted again and again. When a party to a controversy

makes a charge of fraud or misconduct on the part of referees, and notifies the other, such party is not required to elect between two inconsistent remedies, and the cases relied upon by appellant —Schrepfer v. Rockford Ins. Co., 77 Minn. 291, 79 N. W. 1005, and In re Van Norman, 41 Minn. 494, 43 N. W. 334—are not in point.

The conclusion we have arrived at does not result in a discrimination against the insurance companies, for the same principle would apply to the actions of the insured in case the insurer should attack the award for the same reason.

Order affirmed.