## FIRE ASS'N OF PHILADELPHIA v. BALLARD.

### No. 1964.

Court of Civil Appeals of Texas. Waco.

Jan. 6, 1938.

Rehearing Denied Jan. 27, 1938.

Thompson, Knight, Baker, Harris & Wright and Ben F. Vaughan, Jr., all of Dallas, for plaintiff in error.

Jno. Atkinson, of Waco, for defendant in error.

GALLAGHER, Chief Justice.

Defendant in error, J. N. Ballard, filed this suit in the district court of Hill county against plaintiff in error, Fire Association of Philadelphia, on an insurance policy issued by it to him on a Ford truck. The parties will be designated as in the trial court. The policy was dated June 24, 1935, and was issued to plaintiff by one of defendant's agents in Hill county, where plaintiff resided. Said policy recited that the truck insured was a 1935 model; that it had been purchased new a few days before at a cost of $812; that plaintiff was engaged in the independent delivery of oil; that such truck was to be used for the transportation of oil and gas, and that the same was to be principally garaged and used in Hillsboro in said county. The truck was destroyed by fire in Navarro county apparently some time in June, 1936. The testimony fails to disclose at what point in Navarro county the truck was burned, how it came to be there, or its condition either before or after the fire.

The parties failed to agree on the amount of the loss or damage. The policy provided that in event of such failure, the insured and the insurer should each appoint a competent and disinterested appraiser; that such appraisers should first select a competent and disinterested umpire; that in event they failed to agree upon an umpire within fifteen days, then at the request of either the insured or the insurer, an umpire should be selected by the judge of a court of record of the county in which the appraisal was pending; that the appraisers should then appraise the loss and damage, and that an award in writing by any two of them should be binding.

Plaintiff appointed R. M. Powell to act as appraiser. Defendant was represented by its adjuster, C. C. Edwards. He appointed R. S. Davis to act as appraiser. Edwards then requested plaintiff to come to Corsicana and bring his appraiser with him. When they arrived at Corsicana, Edwards presented a written agreement to submit the loss to appraisal and both he and defendant signed the same. Powell and Davis then conferred together with reference to the appointment of an umpire. No one was agreed upon and the parties separated. This occurred on July 9, 1936.

On July 24th, the fifteenth day after the fruitless attempt on the part of the appraisers to agree upon an umpire, plaintiff wrote defendant's general agents at Dallas, reciting, in substance, the prior proceedings and advising them that he would take the matter up with the county judge so as to secure an umpire to settle the controversy at once. Said letter was mailed on Friday. No reply was made thereto, but defendant's adjuster Edwards contacted Davis, its appraiser, and authorized him to proceed to Corsicana and procure the appointment of an umpire by the county judge of Navarro county. Davis left on this mission at 6:45 a. m. the following Monday, July 27th. He testified that he went direct to the hotel and from there to the office of the county judge; that the county judge arrived at 8:05 a. m.; and that within a few minutes thereafter he appointed one Butler as umpire. Plaintiff had no notice of such proceeding. Davis testified that he then tried to reach both the plaintiff and Powell by telephone and was unable to do so. He further testified that he then telephoned Edwards, the adjuster, that he had had an umpire appointed, but that he was unable to communicate with plaintiff. Edwards then telephoned plaintiff and informed him that the county judge of Navarro county had appointed an umpire and asked him to get Powell over there so they could make an appraisal, and plaintiff declined to do so. Edwards then instructed Davis to proceed with Butler and make an appraisal, which they did. They prepared and signed a formal award, fixing the value of the truck at $400, the value of the salvage at $40, and plaintiff's loss or damage at $360. They transmitted this award to defendant. There is no testimony with reference to how such values were estimated, except that they viewed the remains or salvage and discussed the matter.

Reverting to plaintiff's actions, the testimony shows that having heard nothing from defendant, he, on the morning of Monday, July 27th, between 9 and 10 o'-clock, applied to the county judge of Hill county for the appointment of an umpire, and that he appointed one Dobbs. Notice was immediately mailed to defendant that the appraisers would meet at 6 p. m., Wednesday, July 29th, at the office of Powell, to make an appraisal or award. No attention was paid to this notice. Powell and Dobbs met at the appointed time and place and fixed plaintiff's loss or damage at $575.

Defendant tendered plaintiff $360 in full satisfaction of his claim. He refused to accept such tender and demanded the sum awarded by said Powell and Dobbs. Plaintiff then instituted this suit. The trial was by the court. The parties agreed that the only question to be determined was whether plaintiff was entitled to $360 or $575, or whether the appraisal was properly pending in Navarro or in Hill county. After hearing the testimony, an outline of which has been recited above, the court held that the award made by Powell and Dobbs was a valid one and rendered judgment in plaintiff's favor for $575. No further findings were made by the court or requested by either party.

■■■ The provision in the policy sued on which vests in the judge of a court of record of the county in which an appraisal is pending, authority, on the application of either party, to appoint an umpire to join in such appraisal, is, judging by the cases cited and found, of comparatively recent use. The language of such provision assumes that every pending ef-

fort at appraisal has a definite legal situs. It contains nothing tending in any way to indicate the elements to be considered in attempting to determine such situs. No case has been cited or found which attempts to prescribe the elements necessary to locate a pending effort at appraisal in a particular county. The purpose of an appraisal provision is apparently to afford a simple, speedy, inexpensive and fair method of determining the loss or damage resulting from the happening of a contingency insured against. In this case, the loss or damage was, under the contractual provisions of the policy, the difference between the actual cash value of the truck calculated according to the method prescribed therein, and the value of the remains or salvage. Since it was specifically provided in the policy that while the truck was to be used for transportation purposes, it was to be principally garaged and used in Hillsboro, Hill county, we may assume that such stipulation was observed in good faith and the condition and value of the truck prior to the fire could be most readily ascertained at that point. No issue is made in this case as to the cause of the fire which destroyed the truck nor the circumstances attending the same. It is conceded that such destruction was complete except as to some unconsumable remains or salvage of insignificant value. An ocular inspection of the salvage could therefore furnish only a minor aid in determining the amount of compensation to which plaintiff was fairly and justly entitled. Clearly, we think, the place at which the fire occurred and at which such salvage was located could not as a matter of law constitute an exclusive appraisal situs in Navarro county. The only other ground urged as fixing such situs in said last named county is that the parties were there when the appraisal agreement was signed. Waiving the question of whether any additional agreement other than the provisions of the policy was necessary, we find that such signing was a mere incident. Defendant's adjuster asked plaintiff if it was convenient for him and the appraiser he had selected to come to Corsicana and meet him and defendant's appraiser there. Apparently in a spirit of harmonious co-operation, they did so. When they arrived, said adjuster produced said agreement and asked plaintiff to sign the same, which he did. There is nothing in said agreement indicating where the remains of the truck were situated, nor where the appraisers named there-

in as having been selected by the respective parties should perform their duties. We do not think the fact that plaintiff was in Navarro county when said adjuster chose to present such instrument for his signature and that he, apparently without any reason to suppose that his rights would be affected otherwise than as stated therein, then and there signed the same, of material importance on the issue of the situs of such appraisal.

The fact that plaintiff resided in Hill county; that the policy was issued and delivered to him there; that by the terms thereof said truck had a contractual base of operation at Hillsboro in said county; and that its value prior to the fire could in all probability be more readily and accurately ascertained at that place, were all proper circumstances for consideration in determining whether the situs of the attempted appraisal, if it had a situs at all, was in Hill county. An affirmative finding that it did have a situs in such county is implied from the judgment of the court and is not without support in the evidence. Defendant cites in support of its contentions the case of Philadelphia Underwriters v. Folds, 156 Ga. 773, 120 S.E. 102, by the Supreme Court of Georgia, in which the court held that jurisdiction to appoint an umpire was vested exclusively in the county where the loss occurred. Such holding was based on a statute of that state which the court construed to require the same. We have no such statute. Other cases cited by defendants in this connection involved destruction of or damage to stationary property, such as improvements on real estate, stocks of merchandise, etc., in which cases the place at which the loss occurred was necessarily the same as the place of the insured property before the fire and the unconsumed remains or salvage, if any, after the same.

Since the parties have apparently waived any consideration of the manner in which the appointment of the respective umpires was procured and the procedure followed after such appointments, we have not considered the regularity or validity of the same. See in this connection Camden Fire Ins. Ass'n v. Cahill, 266 Ky. 362, 98 S.W.2d 462; Cady Land Co. v. Philadelphia Fire & Marine Ins. Co., 195 Wis. 509, 218 N.W. 814.

The judgment of the trial court is affirmed.