EDWARD L. KAVLI v. EAGLE STAR INSURANCE
COMPANY, LTD.[1]

December 1, 1939.

Nos. 32,112, 32,113, 32,120, 32,121.

[1]Reported in 288 N. W. 723.

*Bowen, Best, Flanagan & Rogers,* for relator-appellant.
*L. W. Crawhall,* for respondent.

PETERSON, JUSTICE.

These cases bring up for review two orders appointing umpires to appraise losses due to fire under a policy provision found in 1 Mason Minn. St. 1927, § 3512. In each case there was a partial loss. The fires are referred to, for convenience, as the Sixteenth avenue and Highland avenue fires. Both properties were insured against loss by fire by relator-appellant.

The Sixteenth avenue fire occurred on December 22, 1938, and the Highland avenue fire occurred on December 27, 1938. There were some negotiations for settlement extending over a period of about six weeks. On February 9, 1939, proofs of loss were served. The company on February 15, 1939, served notice in each case that the parties could not agree upon the amount of loss and demanded an appraisal under the policy provisions. On the same day it appointed one Anderberg appraiser for the Highland avenue fire and one Billingsley for the Sixteenth avenue fire. On February 16 the insured appointed Mr. Chester L. Nichols, a member of the Hennepin county bar, appraiser in each case and notified the insurer on February 17, 1939, giving the appraiser's full name and address, where he was accessible at all times.

The insurer's appraisers did not get in touch with the insured's appraiser, nor did they attempt to do so. On February 20, four days after his appointment, the insured's appraiser sent a letter to both of the insurer's appraisers requesting a conference for the purpose of naming an umpire in each arbitration.

Billingsley claimed that he did not receive Mr. Nichols' letter until February 23. He communicated with Nichols that day by telephone and sent him a letter in which he requested him to submit the names of three or four contractors from which Billingsley was to select one as umpire. Nichols received the letter on the 24th. Nichols' version is that in the telephone conversation of the 23rd Billingsley insisted on naming a building contractor and Nichols insisted on a lawyer as the umpire and that he submitted the names of three reputable lawyers as nominees.

Anderberg left the state on February 18 and was absent therefrom until February 27, on which date he received Nichols' letter. He claims that the letter was the first notice he had of his appointment, which he verified by communicating with the insurer's representative; that he then got in touch with Nichols for the purpose of discussing the selection of an umpire and that Nichols told him that the time for discussing the appointment of an umpire had expired for the reason that the insured had applied to the court to name an umpire, the appraisers having failed to do so within the time allowed for the purpose.

The application for the appointment of an umpire was made by written notice of motion served on the insurer on February 24, 1939, which was set for hearing on March 2, 1939. The court granted the appraisers an additional day in which to agree, and, they having failed to agree, the court appointed an umpire for each arbitration.

The policy provision found in 1 Mason Minn. St. 1927, § 3512, under which the applications for the appointment of the umpire were made in each case, so far as here material, provides that where the parties fail to agree as to the amount of a partial loss under a fire policy each party may select an appraiser within 15 days after a statement of loss has been rendered by the insured to the insurer as required by the statute, and the two appraisers so chosen shall first select an umpire, "provided, that if after five days the two appraisers cannot agree on such an umpire, the presiding judge of the district court of the county wherein the loss

occurs may appoint such an umpire upon application of either party in writing by giving five days' notice thereof in writing to the other party."

The insurer contends that the notice of application for the appointment of an umpire in each case was given before the five days had run and that the court was without jurisdiction to make the appointments. Its argument is that the appraisers could not agree until they had first met, deliberated, tried to, and failed through inability to agree. In the Sixteenth avenue case, it claims that the five days commenced to run from February 23, the day Billingsley talked with Nichols on the telephone about the appointment of an umpire, and in the Highland avenue case from the 27th, the day Anderberg talked with Nichols concerning the matter. The insured contends that the five-day period is a time limited within which the appraisers must act and that it makes no difference whether they cannot agree because their attempts to do so have failed or they made no attempt to agree at all. No point is involved whether the five days begin to run from the day of appointment or from the day of notice thereof to the adverse party, nor could the point be made with any hope of success, since the application to the court to name an umpire was made more than five days after notice to the insurer of the appointment of the insured's appraiser.

The claim is also made that none of the appraisers took an oath to qualify as such until after the five days had run.

The provision that if after five days the appraisers cannot agree on an umpire the presiding district judge may appoint one upon application requires the appraisers to name an umpire within the five days and authorizes the judge to make the appointment if the appraisers cannot do so within the time stated, regardless of whether the inability is due to failure to agree after attempting to do so or to failure to attempt to agree at all. In Powers Dry Goods Co. v. Imperial F. Ins. Co. 48 Minn. 380, 388, 51 N. W. 123, 124, decided before the enactment of our present statute, we pointed out that arbitration provisions in a fire insurance policy "can only be carried into effect by the concurrent action of both

parties." There simply cannot be an agreement unless both give their assent. It makes no difference why they cannot assent, whether it be refusal or absenting oneself or what not. Nor need there be meeting and deliberating of the appraisers to establish inability to agree. Such inability may be due just as much, if not more so, to conduct which prevents communication and the processes by which a concurrence might be reached.

A statute sometimes, as we pointed out in State, by Ervin, v. Goodman, 206 Minn. 203, 208, 288 N. W. 157, speaks as plainly by inference and by means of the purposes which underlie it as in any other manner. The purpose of arbitration is to provide a plain, speedy, inexpensive, and just determination of the extent of the loss. Powers Dry Goods Co. v. Imperial F. Ins. Co. 48 Minn. 380, 51 N. W. 123; Christianson v. Norwich Union F. Ins. Soc. 84 Minn. 526, 88 N. W. 16, 87 A. S. R. 379. Absent a policy provision allowing the appraisers a certain time within which to name an umpire, it is the duty of a party to choose an appraiser who will act with reasonable promptness with the other appraiser in naming an umpire. Read v. State Ins. Co. 103 Iowa, 307, 72 N. W. 665, 64 A. S. R. 180; Providence Washington Ins. Co. v. Wolf, 168 Ind. 690, 80 N. E. 26, 120 A. S. R. 395; 14 R. C. L. p. 1362, note 5; 7 Couch, Cyc. of Ins. Law, § 1614. While an appraiser or referee is not the representative or agent of the party appointing him so as to be subject to his control while performing his duties as appraiser and it would be highly improper for the appraiser to submit to the control or influence of such party, the party appointing an appraiser is responsible when the appraiser whom he selected arbitrarily and unfairly refuses to act with the other appraiser. Knox-Burchard Merc. Co. v. Hartford F. Ins. Co. 129 Minn. 292, 152 N. W. 650; O'Rourke v. German Ins. Co. 99 Minn. 293, 109 N. W. 401; Harrison v. Hartford F. Ins. Co. 112 Iowa, 77, 83 N. W. 820; Brock v. Dwelling House Ins. Co. 102 Mich. 583, 61 N. W. 67, 26 L. R. A. 623, 47 A. S. R. 562; Bishop v. Agricultural Ins. Co. 130 N. Y. 488, 29 N. E. 844; Uhrig v. Williamsburgh City F. Ins. Co. 101 N. Y. 362, 4 N. E. 745; Hickerson & Co. v. Insurance Companies, 96 Tenn. 193, 33

S. W. 1041, 32 L. R. A. 172; Chapman v. Rockford Ins. Co. 89 Wis. 572, 62 N. W. 422, 28 L. R. A. 405; note, 94 A. L. R. 499, *et seq.*

Fire insurance policies omit details which are to be performed as a matter of course by the parties. There is no provision that one party shall notify the other of the appointment of his appraiser. Nor does it specify a procedure for convening the appraisers. But those things are as well understood as if they were expressed. It is the duty of the parties, and their appraisers, to implement the provisions of the policy by setting the arbitration going.

An arbitration clause which merely provides that the appraisers or referees selected by the parties shall name the umpire is often rendered ineffective by the conduct of one or both of the parties. In the case of inability to agree on an umpire, a stalemate results, which cannot be broken under such a provision. The right may be abused by naming an appraiser who resides out of the state (which our statute prohibits), or at a great distance from the scene of the loss, or who refuses to act with the other party. What constitutes a reasonable time within which to name an umpire where the time is not specified is a controversial question in the particular case. If arbitration fails through the fault of the insurer, it waives compliance with the arbitration clause by the insured. If arbitration fails through the fault of the insured, the absence of an award bars an action on the policy by him. Note, 94 A. L. R. 506, 516. The party who sues or defends, upon the basis that the other party's fault caused the arbitration to fail, loses the right to arbitration himself and takes the risk of being able to establish the fact that the failure was his adversary's fault, which is not always easy to do. He should not be compelled to assume such consequences. See Knox-Burchard Merc. Co. v. Hartford F. Ins. Co. 129 Minn. 292, 152 N. W. 650, and the other cases cited *supra.* Harrison v. German-American F. Ins. Co. (C. C.) 67 F. 577.

To remedy the defects in arbitration due to failure or refusal of the appraisers to act, the statute was enacted to enable a party to make the arbitration clause effective and have the benefit thereof by applying to the court to name an umpire. Fire Assn. of Philadelphia v. Ballard (Tex. Civ. App.) 112 S. W. (2d) 532. In some states the insurance commissioner makes the appointment. Paris v. Hamburg-Bremen F. Ins. Co. 204 Mass. 90, 90 N. E. 420. Since the purpose of the provision authorizing the presiding judge to appoint an umpire under the circumstances stated is to facilitate and make arbitration workable, it should not be so construed as to relieve a party of performing the very duties required of him by the policy, which such provision was intended to secure. A party should not be permitted to name an appraiser who will not act within the time specified. In no event should a party after naming an appraiser be permitted to sit by, not even notify his appraiser of the appointment, allow him to leave the state and first learn of his appointment, after returning, from the other party, as in the case of Anderberg's appointment. Nor should a party be permitted to name appraisers who do not do anything until called upon to do so by the other party, as in the case of Billingsley.

The time allowed for the appraisers to name an umpire, whether computed from the day of their appointment or notice thereof to the insurer, had run so as to authorize the presiding judge of the district court to appoint an umpire upon application.

■ The appraisers may appoint an umpire before they have qualified. This is settled by Astell v. American Cent. Ins. Co. 114 Minn. 206, 130 N. W. 1002; 26 C. J. p. 420, § 550.

The orders are affirmed.

The writs of *certiorari* are discharged.