ROSE SIEGEL, Respondent, v. INSURANCE COMPANY OF NORTH AMERICA, a Corporation, Appellant.

(219 N. W. 467.)

**Insurance — umpire's qualified concurrence in appraiser's estimate — not finding that sound value of insured property was inventory value.**

1. After the refusal of an appraiser to submit a matter of difference to the umpire, the remaining appraiser and the umpire appraised the loss and executed an award. The umpire qualified his concurrence by a written statement indicating that he agreed to the value of the stock in its then present condition, with the method of the appraiser signing the award and, assuming that the inventory was as found by the appraiser, in the estimate of loss and damage,

---

Note.—(2) Failure to secure an award after submission to arbitration as affecting right of insured to bring action on insurance policy, see annotation in 4 L.R.A.(N.S.) 290; 15 L.R.A.(N.S.) 1071; 14 R. C. L. 1361.

it is held that such qualified concurrence is not a finding by the umpire that the sound value of the property insured was, in fact, the inventory value.

**Insurance — when recovery on fire insurance policy must be made on independent evidence.**

2. Where through the mutual fault of the insured and the insurer, without the fault of either, an appraisal fails, and where a new appraisal is not possible, the recovery under an insurance policy is limited to such loss or damage as may be established by independent evidence, and the option of the insurer to take all or any part of the articles insured at an ascertained or appraised value, or to replace, is not available.

**Insurance — time for insured to exhibit remains of property includes reasonable time for inspection.**

3. A clause in an insurance policy securing to the insurer the right of inspection by requiring the insured to exhibit all that remains of the property "as often as required," but which specifies no time during which the right to inspect shall be available, must be construed as providing for a reasonable time for inspection, and it is held that, in the circumstances disclosed, the time within which the right of inspection was available was not unreasonable.

Opinion filed February 1, 1928.   On rehearing May 22, 1928.

Fire Insurance, 26 C. J. § 467 p. 365 n. 16; § 560 p. 425 n. 37; § 570 p. 428 n. 91; § 605 p. 450n. 83.

Appeal from the District Court of Burleigh County, *Jansonius,* J. Reversed and new trial granted.

*Lawrence, Murphy, & Nilles,* for appellant.

"The provisions of a policy of fire insurance, giving the right to the insurer to have the damaged goods exhibited to it as often as required, and to have the loss, in case of a disagreement, determined by appraisement, looking as they do to the correct ascertainment of the loss, cannot be disregarded by the insured; and a sale of the goods by him, by which these rights are cut off, avoids the policy and presents a recovery thereon." Astrick v. Insurance Co. 128 Fed. 477.

"The right of the insurer to have the goods exhibited as often as required is not affected by the fact that they were examined by adjusters of the company at a preliminary stage of the controversy, in an effort to arrive at an amicable settlement of the loss." Ibid.

"Notice of the intention to exercise this right did not have to be given until thirty days after the receipt of proofs of loss and the in-

surers were entitled to this full period in which to make up their mind. It is no objection, therefore, that in notifying the plaintiff not to sell they did not say positively that they proposed to exercise the right, but only that they might want to." Ibid.

The entering into an appraisal does not constitute an election on the part of the insurance company to pay the damage in money which precludes it from thereafter exercising its option to take over the property at its ascertained or appraised value, or to replace it. Langan v. Ætna Ins. Co. 96 Fed. 705.

"By making the sale the plaintiff deprived the defendant of the right, to the extent of the property sold, to take it at its appraised value, or to replace it, and cannot recover damages to the portion sold." Marblestone v. Phœnix Assur. Co. 210 N. W. 385; Providence-Washington Ins. Co. v. Wolf (Ind. App.) 72 N. E. 606; Oshkosh Match Works v. Manchester F. Ins. Co. 92 Wis. 510, 66 N. W. 525.

*Scott Cameron,* for respondent.

"An adjuster of an insurance company authorized to settle an alleged loss has the power to determine its amount, and how, when, and where it should be paid, hence he has necessarily the authority to determine whether it shall be paid in money or by the reconstruction of the injured building (or take over the salvage or replace the property) and the power to exercise the option of the company in that behalf." Snowden v. Insurance Co. 122 Pa. 502, 16 Atl. 22; Platt v. Insurance Co. 153 Ill. 113, 38 N. E. 580, 26 L.R.A. 853.

"The election not to be bound by the arbitration was necessarily a waiver of the option to take the goods at the appraisement. It is illogical to hold that the defendant in one breath could say that it repudiated the arbitration, and in the next assert and claim rights growing out of and depending on it." Model Dry Goods Co. v. North British Mercantile Ins. Co. 79 Mo. App. 550.

"Where the policy gives the right to elect to replace or repair within thirty days after notice of the loss, repairs are unauthorized, unless the election is made, and notice thereof given to the insured, within thirty days after proofs of loss are left with the local agent." 4 Cooley, Ins. Briefs, 3826, citing Insurance Co. of N. A. v. Hope, 58 Ill. 75.

"It must be assumed that an insurance company intends to carry out the primary purpose of its contract; and if it sees fit to waive any

of the technical conditions of the policy, inserted therein for its own benefit, it is readily permitted to do so. . . . Since forfeitures are not favored in the law, the courts are always prompt to seize hold of any circumstances that indicate an election to waive." Beauchamp v. Retail Merchants Asso. 38 N. D. 483, 165 N. W. 445.

"Submission of controversies to arbitrators for decision are favored as a speedy and inexpensive mode of adjusting differences, and every reasonable intendment will be made in favor of awards." Caldwell v. Brooks Elevator Co. 10 N. D. 575, 88 N. W. 700.

"The insured's right of action is not derived from 'the agreement to submit to appraisement which merely provides a means of ascertaining the loss, but from the policy; and if he in good faith complies with the terms of the policy and is not chargeable with the failure of the appraisers, his right of action on the policy would seem to be complete." Security Printing Co. v. Connecticut F. Ins. Co. (Mo.) 240 S. W. 263.

"And where the contract is susceptible of two constructions, that one will be adopted which will uphold rather than defeat the validity of the contract." 26 C. J. 71(69).

"Where an insurance policy provides for arbitration, and reserves to the company the option to repair, a demand by it for arbitration precludes it afterwards exercising the option to repair, whether or not an award was reached." Elliott v. Merchants & Bankers' F. Ins. Co. (Iowa) 79 N. W. 452.

"An agreement made by an insurance company whereby the actual cash loss and damage done to the property of the insured was submitted to arbitrators for decision and award is a waiver on the part of the company of an option to repair, reserved in the policy." McAllister v. Niagara F. Ins. Co. (N. Y.) 50 N. E. 502.

"To attack an award of arbitrators, made under a standard fire insurance policy provision, it is necessary to allege specific facts and not general conclusions that the arbitrators acted erroneously and incorrectly." Bahr v. Union F. Ins. Co. (Minn.) 209 N. W. 490.

PER CURIAM. This is an action upon a policy of fire insurance. At the conclusion of the trial, both parties having moved for a directed verdict, the court discharged the jury and took the case under advise-

ment, thereafter filing a memorandum opinion and signing an order for judgment in favor of the plaintiff. The appeal is from the judgment. The plaintiff was the owner of a store in the city of Bismarck, the stock consisting principally of men's wearing apparel, including shoes. The stock was insured by the defendant company for $2,000 and there was $5,000 of other insurance. On February 22, 1926, a fire occurred which occasioned damage and loss to the plaintiff. On February 26th and 27th, one Gearey, an adjuster for the defendant company, visited the plaintiff's store for the purpose of adjusting the loss. He inspected the premises and the stock and was supplied with an inventory of which he made use in connection with his attempted adjustment. No adjustment was made. On March 2d the plaintiff demanded an appraisement under the terms of the policy. The company immediately agreed and named an appraiser. An umpire was selected and an appraisal agreement executed. On March 12th and 13th the appraisers met at the store of the plaintiff. They immediately disagreed as to the procedure to be followed in appraising the loss. As we understand the disagreement, the appraiser selected by the adjustment company, which was acting for the defendant, insisted upon estimating the damage to the visible stock, while the appraiser who had been selected by the plaintiff desired to take the inventory made some seven weeks before the fire as a basis and to determine the difference between the value of the stock on hand after the fire and that shown by the inventory. It appeared that immediately after the fire the entire stock was in a topsy-turvy condition; that it had been more or less tossed about by the force of the streams of water directed by the firemen; that there was a great deal of damage from the water thus applied; also, that in cleaning up after the fire some of the contents of the store had been hauled out over the protest of the plaintiff's agent, her husband. Upon the failure of the appraisers to agree upon a method of procedure and a refusal by the appraiser selected by the adjustment company to submit the matter to the umpire, the appraisers left the store. Thereafter the appraiser selected by the plaintiff and the umpire appraised the loss. The umpire signified his agreement with the method employed by this appraiser and, on the basis of the inventory value, concurred in finding that the loss and damage was $6,795.24. In arriving at this loss and damage it appears that the

prior inventory was supplemented by the record of sales and additions or replacements. Proofs of loss were later supplied and the plaintiff immediately proceeded to advertise and conduct a fire sale. There was considerable correspondence between the adjustment company and the plaintiff or her attorney. This reflects in a general way the inability of the parties to agree upon an adjustment and particularly an appraisal, different views as to the responsibility for the appraisers failing to act in harmony, and the willingness of the adjustment company to name another appraiser, while the insured was insisting that there had already been a binding appraisal. The defendant company at all times was insisting upon its contract rights under the policy. Over the protest of the adjustment company the plaintiff proceeded to sell the remainder of the stock of goods immediately after forwarding proofs of loss to the defendant.

On this appeal there are three main contentions: (1) That the appraisement was invalid as not being agreed to by the umpire or by two appraisers; (2) that the sale and disposition of the damaged stock before the expiration of thirty days from the filing of the proofs of loss was a violation of the policy conditions preventing recovery; (3) that the plaintiff failed to furnish an inventory as required by the policy.

The policy provides that the liability of the company shall in no event exceed what it would cost the insured to repair or replace the property damaged or destroyed with material of like kind and quality, the ascertainment of the loss or damage to be made by the insured and the company or, if they differ, by appraisers; that the loss shall be payable within sixty days after due notice, ascertainment, estimate, and satisfactory proofs of loss have been received by the company, and it contains this provision: "It shall be optional, however, with this company to take all, or any part, of the articles at such ascertained or appraised value, and also to repair, rebuild, or replace the property lost or damaged with other of like kind and quality within a reasonable time, on giving notice, within thirty days after the receipt of the proof herein required, of its intention so to do; but there can be no abandonment to this company of the property described."

It further provides for an immediate notice of any loss, for the protection of property from further damage, for the separation of the

damaged from the undamaged personal property and putting it in the best possible order, for the making of a complete inventory of the same, stating the quantity and cost of each article, and the amount claimed thereon. It also contains this clause: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same. . . ."

The appraisal stipulation is as follows: "In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately the sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser respectively selected by them and shall bear equally the expenses of the appraisal and umpire."

The only evidence of the loss which will support the judgment in this case is that contained in the appraisal and proof of loss, the judgment having been rendered on the theory that the appraisal was binding. If it be assumed that the action of the appraiser selected by the adjustment company in declining to call in the umpire to adjust the differences between him and the other appraiser justified the latter and the umpire in going ahead and completing the appraisal. See Boutross v. Palatine Ins. Co. 100 Kan. 574, 164 Pac. 1069; Caledonia F. Ins. Co. v. Traub, 86 Md. 86, 37 Atl. 785; Powers Dry Goods Co. v. Imperial F. Ins. Co. 48 Minn. 380, 51 N. W. 123; Swearinger v. Pacific F. Ins. Co. 66 Mo. App. 90; Model Dry Goods Co. v. North British & M. Ins. Co. 79 Mo. App. 550; Broadway Ins. Co. v. Doying, 55 N. J. L. 569, 27 Atl. 927. Still, before the defendant can be bound by the appraisement, it must appear that the remaining appraiser and the umpire agreed upon every item entering into the award. We find in the award that the sound value of the merchandise before the fire is fixed at $10,192.86. The appraiser and the umpire signed this

award, but opposite the name of the umpire appears the following statement:

"Signing as to value of stock in present condition. I agree with method of the appraiser R. L. Johnsrud arriving at the loss, assuming that the inventory was $10,192.86, the loss and damage is $6,795.24."

We can only construe this language as meaning that the umpire agrees with the method of the appraiser and that he assumes, without himself determining, that the inventory value was $10,192.86. We cannot construe it as a finding by the umpire that the sound value was in fact $10,192.86. Therefore, the failure of the two to agree upon the sound value vitiates the award. This necessitates a reversal of the judgment for lack of competent proof of loss and damage.

In view of the fact that another trial must be had, we deem it proper to consider briefly some of the remaining questions urged on the appeal, as they are reasonably certain to arise again.

On this record we cannot regard the failure of the first appraisal to be any more attributable to one party than to the other and upon another trial the plaintiff will be required to adduce independent evidence of loss. No appraisal can now be had. Hence, appraisal is no longer involved and the option of the company to take all or any part of the articles at an ascertained or appraised value, or to replace, is not available. These options are clearly intended as means of protecting the insurance company against excessive awards, and, where the award fails through the fault of both parties or without the fault of either and the recovery is limited to the loss which the plaintiff is able to establish by a preponderance of evidence, the defendant loses no valuable right.

As to the contention that the right of inspection was lost through the action of the insured in disposing of the property, we think it a sufficient answer to say that the policy does not provide for any specified period during which this right shall exist. It must be assumed, therefore, that a reasonable time was contemplated. We are not prepared to say that the period of more than thirty days which existed in this case was unreasonable.

Judgment reversed and a new trial granted.

Nuessle, Ch. J., and Birdzell, Burke, Burr, and Christianson, JJ., concur.

Per Curiam. (On rehearing.) On a rehearing the principal argument on behalf of the defendant and appellant dealt with the effect of the failure of the appraisal on the optional rights of the company to take all or any part of the goods at an ascertained or appraised value or to replace the damaged goods. It is said that the effect of the non-waiver provision is to keep alive the option to replace notwithstanding the failure of the appraisal. The record shows that the company promptly repudiated the attempted appraisal and refused to be bound by it and that the proof of loss submitted was one based upon this appraisal. We think it so clear that the option to take all or any part of the articles insured at an ascertained or appraised value is only available where there is an ascertained or appraised value prima facie binding upon the company that it needs no further argument to demonstrate that this option was not available, and we shall give no further consideration to this phase of the matter.

That portion of the original opinion which holds that neither option was any longer available to the defendant in the circumstances disclosed by the record was especially criticized with reference to the option to replace the damaged goods. Did the option to replace still exist after the ineffectual effort to appraise the loss, or does it exist wholly apart from an ascertainment by agreement, appraisal, or otherwise, of the loss? This is the question to be determined.

An insurance contract is an obligation to compensate for a loss. The obligation is limited to a stated amount of money and is ordinarily considered to be payable in money. The standard policy contains provisions governing the method to be pursued, in case of loss, in arriving at the amount of the loss if the parties do not agree. The insured fulfills every duty he owes under the contract when he sets in motion the machinery for arriving at a determination of the loss. If the effort is abortive, through no fault of his, he has not lost his insurance. The obligation to pay the loss remains. The parties could not legally contract to deprive the ordinary tribunals of jurisdiction to determine their rights under the contract. Section 5927, Compiled Laws of 1913. An insurance contract is not a contract to submit a

56 N. Dak.—54.

matter for arbitration; it is a contract to pay a loss. In view of the disadvantage to the insured of further delay incident to the failure of one appraisal, we are not inclined to impose upon the insured, through interpretation of the policy, an obligation to resort to another attempt at appraisal; for it will be noted that, under the contentions of the company, the insured is bound, during the thirty-day option period after the receipt of the proofs of loss, to take no steps which would interfere with the full enjoyment by it of the options if it should elect during that period to exercise either of them. Meanwhile, the insured may be sustaining additional losses due to interruption of his business, to the continuity of overhead expenses, etc. The interpretation contended for by the insurance company places in the company, practically speaking, the power to compel the closing of a large mercantile establishment for the option period at the peril of forfeiting a claim for a small loss under the policy. The parties having disagreed, the policy method fixed as a condition precedent having failed without the fault of the insured, and the company having rightly repudiated the invalid appraisal, we see no further obstacle to the pursuit of the ordinary legal remedy to recover the loss. 14 R. C. L. p. 1361, ¶ 532 and cases cited.

To us it seems clear that the insurer, while repudiating all steps that have been taken to arrive at an estimate of the loss, is not in position, under the policy, to await the outcome of some later voluntary attempt at adjustment and then claim that it has thirty days' time within which to determine whether it will replace the damaged property. It seems to us that the purpose of the option to replace, as well as the option to take the damaged goods at an ascertained or appraised value, is to protect the company against excessive appraisals which are binding upon them or to protect it from excessive claims contained in proofs of loss. otherwise furnished by the insured and upon which it elects to act. Where proofs are submitted which the company for a legally sufficient reason rejects, it in effect says that the claim is not liquidated at the amount stated and, consequently, that the basis has not been fixed upon which it may later determine whether or not to exercise one of its options. After so rejecting proofs of a claim or a proof of loss, it is not in a position to contend that it was prejudiced through inability to later exercise an option. We are of the opinion that these provisions

are not inserted for the purpose of protecting the company against an ascertainment of a loss in legal proceedings. They have to do wholly with the steps which are in the nature of conditions precedent to legal proceedings being brought.

The order of reversal will stand.

NUESSLE, Ch. J., and BIRDZELL, CHRISTIANSON, BURKE, and BURR, JJ., concur.